## Richmond.

STATE AND CITY BANK AND TRUST COMPANY, AD-
MINISTRATOR OF JERRYMIAH J. HENNESSY, DECEASED
v. NORFOLK AND WESTERN RAILWAY COMPANY.

January 14, 1926.

CROSSINGS—*Failure to Give Signal—Conflicting Evidence—Contributory
Negligence of Plaintiff—Questions for Jury—Case at Bar.*—The instant
case was an action to recover for the death of plaintiff's intestate,
when an automobile driven by intestate was run into by a train of
defendant at a highway crossing. It was conceded that plaintiff's
intestate was guilty of contributory negligence but, in view of section
3959 of the Code of 1919, this was no bar to recovery if the railroad
failed to give statutory signals. So the sole question at issue was
whether there was sufficient evidence to carry to the jury the question
as to whether defendant gave the statutory signals, and upon this
issue the evidence was conflicting.

*Held:* That the trial court was right in submitting the case to the
jury, first on the issue as to whether defendant gave the signals, and
if not, then on the comparative negligence doctrine, but erred in
setting aside the verdict for the plaintiff and entering judgment
for the defendant.

Error to a judgment of the Circuit Court of Nanse-
mond county, in a proceeding by motion for a judg-
ment for damages. Judgment for defendant. Plaintiff
assigns error.

*Reversed.*

The opinion states the case.

*W. W. Beverley* and *Saunders & Hutton,* for the
plaintiff in error.

*James H. Corbitt, L. P. Holland* and *F. M. Rivinus,*
for the defendant in error.

CHICHESTER, J., delivered the opinion of the court.

This was an action brought by State and City Bank and Trust Company, administrator of Jerrymiah J. Hennessy, deceased, hereafter referred to as plaintiff, against Norfolk and Western Railway Company, hereafter referred to as defendant, to recover damages in the sum of $10,000 on account of the death of plaintiff's intestate occasioned by reason of the alleged negligence of the defendant.

Upon the trial of the action in the Circuit Court of Nansemond county at the October term, 1924, there was a verdict in favor of the plaintiff in the sum of $5,000.

Defendant moved the court to set aside the verdict on the ground that it was contrary to the law and the evidence, and because it was without evidence to support it.

The trial court sustained this motion, set aside the verdict, and entered judgment for the defendant. Exception was duly taken to this action of the court and the error complained of in this regard is the only question before this court for review.

The real and only question at issue is whether there was sufficient evidence to carry to the jury the question as to whether the defendant gave the statutory signals as its train approached the crossing where the collision between defendant's engine and plaintiff's intestate's automobile occurred.

The trial court thought that, in spite of the jury's verdict, there was not enough evidence as a matter of law to justify the finding that the statutory signals were not given.

Section 3958 of the Code of 1919 provides that "every railroad company, whose line is operated by steam, shall provide each locomotive engine passing upon its road with a bell of ordinary size, and steam

whistle, and such whistle shall be sharply sounded outside of incorporated cities and towns at least twice at a distance of not less than three hundred yards nor more than six hundred yards from the place where the railroad crosses upon the same level any highway or crossing, and such bell shall be rung or whistle sounded continuously or alternately until the engine has reached such highway crossing, and shall give such signals in cities and towns as the legislative authorities thereof may require."

If the defendant failed to give the signals as required by the statute, and there was any causal relation between the failure so to do and the accident (and this latter question was not raised, and it would have been a question for the jury if it had been raised in this case), the plaintiff was entitled to recover, even though he was guilty of contributory negligence.

Section 3959 of the Code of 1919 provides: "If the employees in charge of any railroad engine or train fail to give the signals required by law on approaching a grade crossing of a public highway, the fact that a traveler on such highway failed to exercise due care in approaching such crossing shall not bar recovery for an injury to or death of such traveler, nor for an injury to or the destruction of property in his charge where such injury, death or destruction results from a collision on such crossing between such engine or train and such traveler or the property in his charge, respectively, but the failure of the traveler to exercise such care may be considered in mitigation of damages."

It was conceded in the instant case that the plaintiff was guilty of contributory negligence.

The facts of the case pertinent to the sole issue in the case are as follows: Plaintiff's intestate (with one Millner) was driving a Dodge coupe along the con-

crete highway from the city of Norfolk to the city of Suffolk. As he approached the Norfolk and Western tracks near the corporate limits of Suffolk, he stopped his car about twenty feet from the westbound track of defendant to allow a freight train going toward Norfolk to pass. Immediately after the freight train had passed plaintiff's intestate drove upon the crossing and his automobile was struck by a passenger train coming from Norfolk, just before it cleared the crossing. As a result of the impact the automobile was destroyed and plaintiff's intestate killed. The passenger train was nearest Hennessy as he approached the crossing and he had an unobstructed view down the track for about a mile. There is no evidence that the plaintiff's intestate ever looked to see whether a train was approaching from the east. If he glanced in the direction from which the passenger train was coming, he evidently did not see it, for immediately upon the passage of the freight train he left a place of perfect safety, where he had come to a full stop and had cut off his engine, and drove upon the defendant's tracks in the face of the on-rushing train, not in precipitate haste, as if he was undertaking to beat the train to the crossing, but negligently and in evident unconsciousness, as was his companion, of the impending danger. Upon this point, Millner testified, in response to a question as to whether Hennessy looked: "I took it for granted that he did. He didn't say anything." He turned his head, "but I couldn't say that he saw anything." Millner also testified that he looked first toward Suffolk, to his right, and then toward Norfolk, and that he saw nothing.

Upon his examination in chief he testified: "We drove along up the road, and when we got to the crossing we could see a freight train coming. We drove

up to a safe distance of the track    *    *    and stopped, and cut the engine off, and were sitting there waiting for the train to go by. As it got past I looked out and didn't see anything. He was operating the car, and he started and we got on the track, and the next thing I knew the train was right on top of us."

They evidently did not hear the whistle blow or the bell ring. The engineer and fireman testified that the whistle blew for the crossing, and that thereafter the bell was rung until the crossing was reached. There was testimony of other witnesses corroborating these witnesses. On the other hand there were several parties in automobiles just behind the Dodge coupe occupied by plaintiff's intestate and Millner whose evidence is in conflict with that of the engineer and fireman.

T. A. Gillette, who was seated in an automobile a few yards behind the Dodge coupe, waiting for the freight train to pass, testified: "I was paying attention to the (passenger) train. I heard the train when it first blew,    *    *    the regular mile whistle blow, one long blow. It didn't blow any more until it blew the distress whistle    *    *    about 100 feet from the crossing."

W. D. Simmons, who occupied the car with Gillette, stated in response to the question:

"Q. When you first looked down the track and saw the train coming, did you hear any whistle or bell ringing?

"A. Not when I first heard the train, but in a second or two she began to blow the distress signals. I saw the train before she began to blow the signals, but about that time she began to blow the distress signals.

"Q. Did you hear any bell?

"A. No; I didn't hear any bell. I don't say it didn't ring, but I didn't hear it."

It will be noted that this witness heard the train

but didn't hear the bell. He also heard the distress whistle.

Bettie Harris, who was riding in a Paige car, going at the rate of about fifteen miles per hour approaching the crossing, saw the train when it first blew and watched it until it reached the crossing. In response to questions propounded by counsel for defendant, she testified:

"Q. You were not paying much attention to whether the bell was ringing or not?

"A. We were so close if the bell had been ringing we would have heard it. We heard the train running, and we could have heard the bell.

"Q. You think you could have heard it?

"A. Yes, sir.

"Q. But you have no recollection of having heard the bell?

"A. No, sir. Mr. Corbitt, if any bell had been ringing we would have heard it. We would have heard it."

There were other witnesses who testified that they did not hear the bell ring or the whistle blow, but who would not swear that the bell was not rung.

We think this evidence was sufficient to carry the question to the jury, and that their finding was conclusive.

In *Director General* v. *Pence's Adm'x*, 135 Va. 329, 116 S. E. 351, this court said: "As to whether the statutory signals were given, the evidence is in this condition: The engineer and fireman, who are more or less corroborated by a number of witnesses, most of them employees of the defendant company, but some of them not connected with the road in any way, testified that the crossing signal was sounded and that the bell was rung in full compliance with the statute. A

number of other witnesses for the plaintiff testified that they did not hear the bell and the whistle. Most of the testimony to this effect is of a negative character, but taking it in connection with Stilwell's statement after he had stopped north of the crossing and then started up again, he continued to listen and heard no bell or whistle when the train was then certainly within a few feet of him, we have reached the conclusion that whether the signals were given was a question for the jury."

In the instant case we think that while most of the evidence that the bell was not rung or the whistle blown as required by the statute was of a negative character, yet taken in connection with the very positive statements of T. A. Gillette and Bettie Harris, witnesses who were shown to have been in a position to hear and see, and who were shown to be attentive and listening, a conflict in the evidence on this point was raised sufficient to justify its submission to the jury.

Two interesting cases recently decided by the Special Court of Appeals very well illustrate the application of the statutes under consideration in the instant case, to facts closely similar to those here disclosed, where recovery was allowed, or distinguishable from the facts here, where recovery was denied.

In *Gregory* v. *Seaboard Air Line R. Co.*, 142 Va. 750, 128 S. E. 272, a verdict for the plaintiff was set aside by the trial court and judgment entered for the defendant. In reversing the trial court, Judge Christian says: "The evidence of the defendant tended to prove that the crossing signals were sounded as required by statute; that the roar of the train could be heard for nearly a mile; that the station signal was sounded about a mile from the crossing; that a person

approaching the crossing could have seen the train for nearly a mile; and that the plaintiff was guilty of gross negligence in not looking and listening when due care would have prevented the injury—therefore, the plaintiff could not recover. The plaintiff's evidence tended to prove that he looked to the east when he reached the store and saw no train coming in that direction, then turned his attention to the west, as the view from that direction was obstructed by buildings near the track; that, when the collision was imminent and the injury unavoidable, he discovered the train in time to jump from the truck and save his life, but not in time to stop the truck; that he did not hear the rapidly approaching train, nor any signals of any kind. The question of the concurring negligence of the parties was clearly one of fact for the determination of the jury as well as the apportionment of the fault, and their finding was conclusive."

In *Etheridge* v. *Norfolk Southern R. Co.*, 143 Va. 789, 129 S. E. 680 (a crossing accident case in which Judge Holt wrote the opinion), the trial court, in an instruction approved by the Special Court of Appeals, submitted the question as to whether the defendant gave the statutory signals, and the question of comparative negligence, to the jury, and the jury found for the defendant. The judgment was affirmed.

In the instant case, the question as to whether the statutory signals were given was for the jury, and their verdict settles the issue against the defendant.

Under section 3959 of the Code of 1919, if the signals required are not given, the failure to give them is negligence. If the defendant here failed to give the crossing signals as required (and the jury so found), there is no evidence in this case to rebut this presumption, especially as there is a total absence of evidence

which showed or tended to show that the plaintiff's negligence was the sole proximate cause of the collision.

The trial court was, therefore, right in submitting the case to the jury, first on the issue as to whether defendant gave the signals, and if not, then on the comparative negligence doctrine, but it erred, we think, in setting aside the verdict and entering judgment for the defendant. We are of opinion, therefore, to reverse the judgment rendered herein in the circuit court, and to enter judgment for the plaintiff.

*Reversed.*