# Staunton.

## E. T. WHITE v. SOUTHERN RAILWAY COMPANY.

September 20, 1928.

The opinion states the case.

*A. B. Carney* and *Wm. G. Maupin*, for the plaintiff in error.

*Thomas B. Gay* and *W. L. Williams*, for the defendant in error.

PRENTIS, C. J., delivered the opinion of the court.

E. T. White, driving his own automobile, a closed Ford sedan, was struck at a railroad crossing by a train of the Southern Railway Company and injured. He sued, alleging negligence, relying upon the allegation that the crossing signals required by statute were not given. There was a jury trial, a verdict for the plaintiff which the trial court set aside, and then entered final judgment in favor of the defendant company, of which the plaintiff is here complaining.

The trial court judge gave these as the reasons for his judgment:

"The defendant, against whom a verdict has been returned, seeks to have it set aside on two grounds:

"1. That the statutory signals had been given and the defendant is free from negligence.

"The plaintiff's evidence on this point is so plainly negative that to give it any effect is to abrogate the rule with reference to this class of testimony.

"2. Assuming that the signals were not given, could plaintiff have stopped his car after he should have seen the *car* approaching, in time to prevent the collision?

"Automobiles have come into such universal use, that some facts in connection with their use may be accepted as matters of common knowledge—one of which is that a Ford sedan with brakes in perfect condition, can, under normal circumstances, be stopped almost immediately when running from ten to twelve miles per hour—certainly in from ten to twelve feet.

"Now plaintiff was some thirty or forty feet away from the track when he saw the train approaching, and admits that he had ample time to have stopped his car, but for the wet and slippery condition of the driveway.

"Accepting plaintiff's statement (all of which appeared to me to be fair and straightforward) as true, then the proximate cause of the injury was the slippery condition of the highway—the railroad's negligence, if any, being the remote cause for which there can be no recovery.

"I think the verdict of the jury should be set aside and judgment entered for the defendant."

The plaintiff describes the occurrence thus:

"A. I was getting ready to go to town about nine o'clock. The colored man working for me had taken

the car and gone to the garage, about three hundred yards from my home, filled the gasoline tank, and returned to the house. It had been raining but was not at that time. I got in the automobile and ran the engine for a short time, and started it and went on, and there are several houses and stores to the right and left of the railroad before you get to the railroad crossing. When I got to the blacksmith shop on the left hand side of the road, and I could not see the track until after I left the blacksmith shop. There was a heavy pine thicket which is on the right of way of the Southern Railway, and a short distance from the blacksmith shop. I looked to the left, and not seeing anything I turned to my right and looked to my right. When I got so I could see the railroad track, I saw nothing coming. I was within about eighteen yards of the railroad crossing before I could see the track—I stepped that off afterwards, after it occurred. I then turned and looked to the left, and I saw the train somewhere between thirty-five and forty yards from the crossing. My first thought was to stop. I put on my brakes. They had been tightened about a week before the accident, and were in good shape, and if the pavement had not been wet, would have stopped before I reached the railroad track, and the car, instead of stopping, slid, and I saw if I kept on going in that direction some part of the train would hit it. I thought about turning off the road to the side of the track, and there was some obstruction on the side, a thicket, small trees and some brush, and wagons, and I saw or thought that the car might turn over and throw me under the train, and I saw there was nothing to do but to go ahead, and try to get across, and I gave the car all it would take without choking, and I got practically across the track myself, but the car did not.

The engine struck the car about two and a half feet in the rear, the front of the car three yards off the pavement, turned it, and actually turned it over on its side, and threw me out, and I was unconscious when I hit the ground. Something struck me on the head. When I came to I was lying on the ground two feet from the cross ties, my head two feet from the cross ties, and the train was going by me. I was stunned, and I stayed there until after the train ran past me. In fact, I was stunned and dazed, and could not have done anything anyhow, and the train ran past, and I crawled over to my automobile and lifted myself up."

He says this later as to the signals:

"Q. Mr. White, as you approached that crossing, did you hear any signals or any bell?

"A. No, sir; I heard nothing; no bell or no whistle until just before the train struck me. Just before the train hit me I heard the bell ringing.

"Q. Could you have heard a whistle when in the car, or a bell ringing?

"A. Yes; I hear the bell very often in my home at times now. I could not help but hear it.

"Q. What was the condition of the door and window of your car?

"A. The left front window open a few inches; the right front window had been broken, and a crack all the way down the center; a small crack.

"Q. The train was approaching you from the left side?

"A. Yes.

"Q. That was the side the window was down on?

"A. Yes, sir."

Another of his witnesses estimated that the left front window was down about three inches. He further testified that he had had ten years experience in driving; that he was driving, he supposed, about

twelve miles an hour; that when he came close enough to the track to see the train, he was about eighteen yards away from the track; that he looked to the south and saw no train, then turned to the north at once and estimated that when he first saw the train he was about ten yards away from the track. He testified that if the pavement had not been very slippery he could have stopped the car before the train struck him, and finally says this:

"Q. Would you not feel any man would be perfectly safe to go up to a railroad track fifteen yards off?

"A. Under ordinary conditions, the pavement not being wet, it is a close shave at that, but you could stop it. I feel certain, if the pavement had not been wet I could have stopped my car.

"Q. What was the character of the weather that morning?

"A. It had been raining some time, and it was a light rain. This pavement was very wet, and very slippery.

"Q. How close do you live to the scene of this accident?

"A. Within about, I imagine, three hundred or four hundred yards, about three city blocks, or four.

"Q. You were actually living that close to the scene of the accident, and were entirely familiar with all the surrounding trees and everything that was piled up there, you had seen them before?

"A. Yes, sir.

"Q. You had had enough experience as a driver to know that rain makes a hard surface pavement pretty slick?

"A. Yes, sir."

■ The plaintiff must recover, if at all, upon this testimony, for there is nothing else upon which a recovery could be sustained.

Two witnesses were introduced for the purpose of supporting his contention that the statutory signals were not given. They were two laborers who were working at a barrel factory at the time the machinery of the factory was in operation. Their testimony was clearly negative. They both said that their attention was not attracted to the matter at all until the crash. They were paying no attention to the train until after the occurrence. Neither of them said that they generally heard the train or bell. One of them said: "Sometimes I hear it when paying attention;" the other said that he was not paying any attention. They both heard the bell just at the time of or after the crash.

On the other hand, the defendant introduced six witnesses. They were the engineman, the fireman, the conductor, two brakemen, and the single passenger who was on the train, which consisted of the engine, tender and one coach, the tender being in front of the engine, and these were all the persons who were on the train. Their testimony shows affirmatively and clearly that the required signals were sounded, and that the automatic bell on the engine was ringing. The passenger paid particular attention to these signals because it was his purpose to get off at Churchland and he was therefore heeding the train signals closely. The train was drifting, the extreme speed estimated by any of the witnesses was fifteen miles an hour, while there is testimony tending to show that it was not more than six miles an hour, and it is certain that its speed had been reduced and that it was about to stop at Churchland and had almost reached the station, and that the train was stopped in a very short distance immediately after the occurrence.

A reference to the generally accepted rule as to

positive and negative testimony is appropriate and helpful.

██ ██ Riely, J., in *Southern Ry. Co.* v. *Bryant's Admr.*, 95 Va. 215, 28 S. E. 183, thus clearly summarizes the rule: "It is consonant with reason and human experience that the positive testimony of a single witness, whose credibility is unimpeached, that he saw or heard a particular thing at a particular time and place, ought ordinarily to outweigh that of a number of equally credible witnesses, who, with the same opportunities, testify that they did not see nor hear it. The particular thing might have taken place, and yet from inattention they may not have seen nor heard it, or, though conscious of seeing or hearing it at the moment of its occurrence, may have afterwards forgotton it from lapse of time or defective memory. In such case, the evidence of the one witness is positive, while that of the many is merely negative. But where a witness, who denies a fact in question, had as good opportunity to see or hear it as he who affirms it, and his attention, because of special circumstances, was equally drawn to the matter controverted, the general rule that the witness who affirms a fact is to be believed rather than he who denies it does not hold good. The denial of the one in such case constitutes positive evidence as well as the affirmance of the other, and produces a conflict of testimony." He then proceeds to analyze and classify the testimony of the witnesses in that case. Referring to one, he said that his testimony was simply "that he did not hear the whistle. He mentioned no circumstances to show that he was listening for it, or that there was anything to direct his attention specially to it. His evidence upon this point was merely negative, and may be left out of consideration."

This may also be here confidently repeated as to the testimony of the two witnesses who were at work in

the barrel factory, paying no attention to the train, who merely testified that they did not hear anything until the crash. The noise of the machinery in the barrel factory and their inattention explains their failure to hear and destroys the value of their testimony, which is not in conflict with the affirmative testimony of the defendant's witnesses.

In view of the plaintiff's own testimony, however, it is proper to make some further citations as to this rule, so as to test its application in this case.

The rule and its qualifications are well stated in 10 R. C. L., pages 1010 to 1012, inclusive. Quoting and paraphrasing therefrom freely, it may be said generally that the testimony of a witness who does not deny but merely states that he did not know of, or has no recollection of, an occurrence, is not of the same probative value as the testimony of a witness that he was giving attention and that no such occurrence took place. The distinction is there made between the two classes of testimony, respectively, negative testimony proper and quasi-negative testimony. "Wherever it can be perceived that a positive witness is guilty of perjury unless his statement is true, while a negative witness may be honestly mistaken, the issue should be found in favor of the former if the witnesses are of equal credibility. Negative testimony proper is entitled to no weight." This should be emphasized. Again: "If a credible witness with apparently adequate opportunity for observation testifies to an occurrence, no conflict arises by the testimony of other witnesses that they were not cognizant of the occurrence, where the latter witnesses' opportunities for observation are not stated, or where it affirmatively appears that their situation was such or their attention was so engrossed that they probably would not have observed the event if it had occurred, or where their

opportunities were not coextensive with those of the witnesses who testify positively to the occurrence." By way of illustration, this is said: "The testimony of witnesses that they did not hear the bell or whistle of a locomotive as it approached a crossing, without proof that the witnesses listened for the signal, or that their attention was in any way directed to it, or that they probably must have heard it if it did sound, cannot prevail against the positive testimony of other credible witnesses that the signal was sounded at the time in question. So, it is held that as against positive affirmative evidence, by credible witnesses, that warning of the approach of a railroad train to a highway crossing was given by the ringing of the bell or the blowing of the whistle, there must be something more than the testimony of witnesses who, by reason of their surroundings, would be unlikely to notice the giving of such warning, that they heard neither a bell rung nor a whistle blown, in order to justify the submission to the jury of the question whether such warning was given. Negative testimony proper acquires no weight by reason of the number of witnesses who give it."

There is, however, a class of testimony, which is said to be quasi-negative testimony, which is thus defined: "Testimony of a witness that he did not see or hear something that he probably would have seen or heard if it had occurred may be strong evidence that it did not occur. Where a witness affirms that a fact occurred, and another who had apparently sufficient opportunity to know and who declares he was paying attention, denies that it occurred, it is generally held not to be a case of positive and negative testimony, but of positive testimony on both sides."

The subject is annotated carefully in a note of *Holmes* v. *Pennsylvania R. Co.*, 74 N. J. L. 469, 66 Atl. 412, 12 Ann. Cas. 1033, *et seq.*

In *Chicago, etc., Ry. Co.* v. *Andrews* (C. C. A.), 130 Fed. 70, this is said: "Where the attention of those testifying to a negative was not attracted to the occurrence, which they say they did not see or hear, and where their situation was not such that they probably would have observed it, their testimony is not inconsistent with that of credible witnesses who were in a situation favorable for observation, and who testify affirmatively and positively to the occurrence. There is then no conflict." Cases from so many jurisdictions are there cited that this must be held to be the sound rule. Many incidents are there referred to as affecting the rule. For instance, it is said in *Wilds* v. *Hudson River R. Co.*, 29 N. Y. 315, that it is a matter of common experience that persons do not always hear customary sounds when they are paying no attention. Attention in the same note is called to the fact that we frequently fail to observe familiar sounds where the circumstances are such that we have no occasion to notice them, and that the ability to hear signals which ordinarily give notice of an approaching train may be impaired by an adverse wind. The later authorities on the subject are collected in additional notes, 18 Ann. Cas. 633 and 39 Ann. Cas. 163.

In 22 R. C. L., page 1057, it is said: "It is a general rule, however, that as against positive affirmative evidence by credible witnesses to the ringing of the bell, or the sounding of the whistle, there must be something more than the testimony of one or more that they did not hear it to authorize the submission of the question to the jury. A mere 'I did not hear,' is entitled to no weight in the presence of affirmative evidence that the signal was given, and does not create a conflict of evidence justifying a submission of the question to the jury as one of fact." The statement of a witness that

he did not hear such a signal is without value as evidence, unless it further appears that he was in a position to hear, was attentive, and that the conditions were such that he would probably have heard such signal if it had been sounded. *Chicago, etc., R. I. R. Co.* v. *Still*, 19 Ill. 499, 71 Am. Dec. 236; *Atchison, etc., R. Co.* v. *Hague*, 54 Kan. 284, 38 Pac. 257, 45 Am. St. Rep. 278; *Northern Cent. R. Co.* v. *State*, 100 Md. 404, 60 Atl. 19, 108 Am. St. Rep. 439, 3 Ann. Cas. 445; *Cotton* v. *Willmar, etc., R. Co.*, 99 Minn. 366, 109 N. W. 835, 116, Am. St. Rep. 422, 9 Ann. Cas. 935, 8 L. R. A. (N. S.) 543; *Holmes* v. *Pennsylvania R. Co.*, 74 N. J. L. 469, 66 Atl. 412, 12 Ann. Cas. 1031 and note; *Foley* v. *N. Y. Cent., etc., R. Co.*, 197 N. Y. 430, 90 N. E. 1116, 18 Ann. Cas. 631 and note; *Keiser* v. *Lehigh Val. R. Co.*, 212 Pa. St. 409, 61 Atl. 903, 108 Am. St. Rep. 872; *Anspach* v. *Philadelphia, etc., R. Co.*, 225 Pa. 528, 74 Atl. 373, 28 L. R. A. (N. S.) 382. Note, Ann. Cas. 1916A, 163; *B. & O. R. Co.* v. *Roming*, 96 Md. 67, 53 Atl. 672; *Culhane* v. *N. Y. Cent., etc., R. Co.*, 60 N. Y. 133.

These rules have never been questioned and have always been recognized in this State.

In *C. & O. Ry. Co.* v. *Chapman*, 115 Va. 32, 78 S. E. 631, Cardwell, J., it is held: "The positive testimony of a single credible witness that he saw or heard a particular thing at a particular time ought ordinarily to outweigh that of a number of witnesses, equally credible, who, with the same opportunities, testify that they did not see or hear it; but where a witness, who denies a fact in question, has as good opportunity to see and hear it as he who affirms it, and his attention, because of special circumstances, was equally drawn to the matter controverted, the general rule that the witness who affirms a fact is to be believed rather than

he who denies it does not hold good. The denial of the one in such case constitutes positive evidence as well as the affirmance of the other, and produces a conflict of testimony to be decided by the jury." *Director General* v. *Pence's Admr.*, 135 Va. 329, 116 S. E. 351.

The case of *State & City Bank & Tr. Co., Admr. of Hennessy* v. *N. & W. Ry. Co.*, 144 Va. 185, 131 S. E. 331, is cited and relied on here for the plaintiff. It can be easily distinguished. The rule that negative testimony is of no value is there recognized, but it is shown that a jury question—a question of fact—was there raised by the testimony of three witnesses. This was a fatal injury at a highway crossing, the killing of one in an automobile, and these three witnesses were in other automobiles waiting for the train to pass. One of them testified that he was paying attention to the train which killed the plaintiff's intestate; that he heard the train when it first blew, which was not the crossing signal, and then said that it did not blow any more until it blew the distress signal, within 100 feet of the crossing where the fatality occurred. Another occupant of the same car, who was in a position to observe, and also in danger if he failed to observe, said that the distress signals were all that he heard, and that he did not hear any bell. He would not trust himself to say that it did not ring, but that he did not hear it. Another witness, who was in another automobile a little further from the crossing but approaching it, testified that they (meaning all the occupants of the machine) were so close that if the bell had been ringing they would have heard it; that they heard the train running; and upon being asked whether she had any recollection of having heard the bell said: "If any bell had been ringing we would have heard it," and

by way of emphasis: "We would have heard it." So in that case it was properly held that this testimony from those who were at the time attentive and in positions to hear created a conflict in the testimony that the proper signals were sounded to be submitted to the jury. It is observed in that case that all three of these witnesses were in a position to hear and that the natural instinct of self-preservation caused them to be on the alert for the purpose of avoiding injury to themselves.

Now the testimony of the plaintiff in this case must be tested by these rules and precedents. Certainly he should have been on the alert for his own safety, but his testimony clearly shows that he was depending upon his eyes and his familiarity with the crossing to avoid the danger. He does not say that he was listening, and there is no reason to suppose that if he had heard these crossing signals his conduct would have been different. He was perfectly familiar with the crossing and its possible danger, and he knew of all the obstructions, how far from the crossing he could see an approaching train, and he knew that under ordinary conditions he could see it far enough away either to stop before he reached the crossing, or to cross it in safety ahead of the train. When he saw the train, his energies and attention were all devoted, first to stopping his machine, and when he found that impossible, to his vain effort to cross the track ahead of it.

Then again his opportunity for hearing the signals must be considered. He was in an automobile with the engine running, and except that one of the windows immediately at his left side was let down a few inches it was closed. He was certainly not in as good a position to hear these signals as if he had not been in the automobile with the engine running, and it is

significant that although a number of witnesses were examined as to the movements of his car immediately before the occurrence, not one of them testified upon this important question. Assuming that the proper crossing signal by blowing the whistle was given at the proper distance from the crossing, as the defendant's witnesses have testified, there is nothing to indicate that at this time the plaintiff was paying any special attention to train signals. He was out of sight of the railroad track and the approaching train, and his evidence indicates that he did not intend to pay any attention to either track or train until he reached a point upon the highway from which he knew that he could see. The crossing whistle signal, if properly given, had certainly been sounded before this point, eighteen yards from the crossing, had been reached.

██ The plaintiff, in his very clear and careful statement of his conduct and thoughts immediately preceding his injury, made no allusion to the train signals. It was only later in his examination that he made any reference thereto, and then in answer to the question: "Could you have heard the whistle when in the car, or the bell ringing?" replied: "Yes, I hear the bell very often in my home at times now. I could not help but hear it." This falls for short of saying that he was listening for the signals and that he could have heard them if they had been given. It does not follow that because he heard the bell frequently in his home, he could also have heard it under the circumstances shown. Without reference to these signals, his testimoney shows that he knew the point upon the highway from which he could see this train if it were approaching him from his left, or north side of the highway, and that he felt confident that the precautions he was taking were sufficient to insure his safety. His evi-

dence, fairly construed, shows that he was not then listening for the train signals, and whether or not he could have heard them if he had been listening is questionable. The burden was upon him to show both that he was listening, and that, if listening, he could probably have heard, and this burden he has not carried.

 It seems to us then that unless we are to treat the definitions of negative testimony as a mere form of words signifying nothing, and to disregard the established rule as to the worthlessness of negative testimony, we must hold that there is no evidence in this case to support the verdict for the plaintiff. It is essential, of course, in this case, that he establish the negligence of the defendant in failing to sound the statutory signals by a preponderance of the evidence. Every word of his testimony may be held to be true, and there is no reason to doubt that it is true, and yet there is no real conflict. All that he testifies to is that he did not hear the signals. Substantial conflicts in testimony must be submitted to a jury, but where there is no real conflict, juries should decide questions of fact in accordance with the testimony submitted. The plaintiff has clearly failed to show by a preponderance of the evidence that defendant's servants failed to sound the requisite statutory signals, whereas the defendant has shown without substantial contradiction that these signals were given. There is no evidence to support the verdict and it is against the evidence.

 The trial court denied the recovery for an additional reason, and that is that the wet and slippery highway was the proximate cause of the plaintiff's injuries. Proximate cause is deep and muddy water into which many men, wise and otherwise, have ven-

tured. Holt, J., in *Etheridge* v. *Norfolk Southern R. Co.*, 143 Va. 799, 129 S. E. 683, says that "it has not only troubled the unlearned but has vexed the erudite." Without classifying ourselves, we shall leave this question where Campbell, J., left it in *C. & O. Ry. Co.* v. *Crum*, 140 Va. 333, 125 S. E. 301, in which a recovery was allowed, though one of the circumstances upon which the defendant relied was that the road was covered by a light snow, and was therefore slippery, and that this was the proximate cause of the injury. He there says: "It was merely an existing condition which should have enhanced the degree of care to be exercised by the driver of both the locomotive and of the truck in approaching the crossing. Its existence was simply a circumstance entering into the solution of the question as to the negligence of the defendant or of the contributory negligence of the plaintiff, negligence being defined to be 'the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation * *.'"

In Shearman & Redfield on the Law of Negligence (6th ed.), section 39, this is said: "It is universally agreed that, if the damage is caused by the concurring force of the defendant's negligence and some other cause for which he is not responsible, including the 'act of God,' or superior human force directly intervening, the defendant is nevertheless responsible, if his negligence is one of the proximate causes of the damage, within the definition already given.' It is also agreed that, if the negligence of the defendant concurs with the other cause of the injury, in point of time and place, or otherwise so directly contributes to the plaintiff's damage that it is reasonably certain that the other cause alone would not have sufficed to produce it, the defendant is liable, notwithstanding he

may not have anticipated or been bound to anticipate the interference of the superior force which, concurring with his own negligence, produced the damage. But if the superior force would have produced the same damage, whether the defendant had been negligent or not, his negligence is not deemed the cause of the injury."

This is both reasonable and supported by authority. It would lead to the conclusion that if the defendant failed to sound the statutory signals, and if this failure in any way contributed to the plaintiff's injury, then the defendant would be liable, because the mere condition of the street would never alone have resulted in the plaintiff's injury as a now effective cause thereof, operating independently of anything else. While causal connection between the defendant's failure to sound the statutory signals, if proven, and the plaintiff's injury may frequently be inferred from the circumstances, there must be causal connection to support a recovery. *Norfolk S. R. Co.* v. *Banks*, 141 Va. 722, 126 S. E. 662. It is certainly true in this case that the wet highway was a cause or condition for which the defendant was not responsible, without which the plaintiff's injury would not have happened. Whether he would have been injured in any event whether the signals had been sounded or not sounded, heard or not heard, we do not know, but we do know from his own statement that if the road had not been wet and slippery he would not have been injured.

Our conclusion is to affirm the judgment in favor of the defendant upon the ground that the plaintiff has failed to show any negligence on the part of the defendant's servants.

*Affirmed.*