UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Malveaux, Friedman and Senior Judge Petty
Argued at Williamsburg, Virginia


JAMES LEE

                                                   MEMORANDUM OPINION* BY
v.        Record No. 0990-24-1                     JUDGE WILLIAM G. PETTY
                                                   OCTOBER 21, 2025
JASON CARR


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Christopher R. Papile, Judge

W. Mark Broadwell (Broadwell Law, on briefs), for appellant.

Philip L. Bradfield, Deputy City Attorney, for appellee.


James Lee sued Jason Carr, a city firefighter, for ordinary and gross negligence arising

from a motor vehicle accident.  The trial court ruled that sovereign immunity barred Lee's ordinary

negligence claim.  A jury returned a $500,000 verdict for Lee on his gross negligence claim.  The

trial court later set aside the jury's verdict, however, finding that evidence showed Carr exercised

sufficient care to defeat Lee's gross negligence claim as a matter of law.

On appeal, Lee challenges the trial court's rulings that sovereign immunity shielded Carr's

actions and setting aside the jury's verdict.  He also contends that the trial court erred by excluding

evidence of an internal fire department policy.  Carr assigns cross-error to the trial court's exclusion

of testimony elicited from a medical expert, which he asserts tended to show the treating physician's

bias.

We cannot consider Lee's sovereign immunity arguments because the record does not

include a transcript of the hearing on Carr's plea of sovereign immunity or a written statement of

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

facts in lieu of a transcript. But we agree with Lee that the trial court erred by setting aside the jury's verdict on his gross negligence claim. Even so, we vacate the jury's award of damages because the trial court also erred by excluding Dr. Arthur Wardell's testimony. Accordingly, we affirm in part, reverse in part, and remand the case for further proceedings consistent with this opinion.

## BACKGROUND

This case arises from a motor vehicle accident at the traffic light-controlled intersection of 16th Street and Ivy Avenue in the City of Newport News. At the time of the accident, Carr was driving a fire department rescue truck (Rescue 1) westbound on 16th Street toward the scene of a motor vehicle accident in the Monitor-Merrimac Bridge-Tunnel. As he approached the intersection, Carr's view of southbound traffic on Ivy Avenue was obstructed by a house. Unable to determine whether he had a red light because of the sun, Carr drove Rescue 1 into the intersection and collided with Lee's vehicle, which had been traveling southbound on Ivy Avenue.

Lee sued Carr for ordinary and gross negligence.[1] Carr filed a plea of sovereign immunity against Lee's ordinary negligence claim asserting that the accident occurred while he was responding to an emergency. Lee responded that Carr had been engaged in ordinary driving not shielded by sovereign immunity and supported his position with deposition testimony given by Carr and Captain Dennis West, who was also inside Rescue 1 during the accident.

After a hearing, the trial court found that a dispatcher had informed Carr "that the vehicles had been cleared in the tunnel and there was no longer an emergency situation" before the

---

[1] Lee also asserted a willful and wanton negligence claim, which is not at issue in this appeal.

collision.[2]  "Although Carr testified that he slowed [Rescue 1] based on this information," the trial court found that "an emergency response does not end until [a] supervisor makes that decision based on on-scene reports from an official," which had not happened before the collision.  The trial court determined that Carr made a "judgment call" to continue into the intersection and that the "bulk of the evidence reflect[ed] that he in fact continued operating [Rescue 1] in an emergency condition, with both emergency lights and siren activated."  The trial court sustained Carr's plea of sovereign immunity because he "exercised his judgment and discretion in choosing to proceed expeditiously through the intersection enroute to the emergency call."

The case proceeded on Lee's gross negligence claim.  Before trial, Carr moved to exclude evidence of the fire department's internal policies, particularly its Emergency Vehicle Operations directive (the Directive).[3]  The Directive instructs fire department personnel operating emergency response vehicles to "come to a complete stop at all red light . . . controlled traffic intersections" and "scan the intersection to ensure that ALL traffic has stopped before proceeding."  Lee argued that the Directive was relevant to his gross negligence claim because Carr "deliberately ignored" the Directive when he proceeded through the intersection.  The trial court granted Carr's motion.

Lee moved to exclude deposition testimony by Dr. Arthur Wardell during cross-examination.  In that deposition, Dr. Wardell testified that Lee owed him about $30,000 for medical treatment and had agreed to "sign a contractual assignment" to pay the medical debt with proceeds from any judgment "from this case."  Lee argued that Dr. Wardell's testimony would

---

[2] The trial court heard Carr's plea of sovereign immunity on June 26, 2023.  Although the record reflects that the trial court received evidence at the hearing, it does not include a transcript of the hearing or a written statement of facts in lieu of a transcript.

[3] Carr provided a copy of the Directive to the trial court during a hearing on his motion *in limine* and the trial court noted that the Directive would "remain[] as an exhibit just for purposes of th[at] hearing."  The appellate record includes a copy of the Directive admitted during the hearing on Carr's plea of sovereign immunity.

require him to explain that Dr. Wardell did not accept his Medicaid insurance. The trial court granted Lee's motion explaining that Lee "owe[d] the money" to Dr. Wardell regardless and nothing suggested that Dr. Wardell would "testify any differently . . . based upon any potential bias on behalf of the outcome" of the case.

At trial, Lee played a silent video recording of the accident.[4] Police officer Brandon Holden went to the scene of the accident and testified that the posted speed limit in that area was 25 miles per hour. Based on his review of the video recording and his own measurements, Officer Holden estimated that Rescue 1 travelled 110 feet in about 1.9 seconds (approximately 39 miles per hour) before braking in the intersection crosswalk.

Carr admitted that he told "the police officer" that "the only reason" he would have gone to the tunnel "was if people [were] in the tunnel." He acknowledged that he had been informed before the accident that "the vehicles were no longer in the tunnel," so he expected to "get turn[ed] around."[5] According to Carr, he drove Rescue 1 between 20 and 25 miles per hour and was "just cruising along" before the accident because "the people were out of the tunnel" and Rescue 1 "was not going to be the first one there regardless." Carr maintained that Rescue 1's lights and siren were on when it collided with Lee's car and explained that their purpose was "[t]o announce that we're coming through or that we're in their way and that we're asking for right of way."

---

[4] Lee played the video recording during his opening argument and throughout trial but did not introduce the recording into evidence. Instead, he presented copies of still images from the recording. The still images are not included in the appellate record, but a copy of the recording, which was introduced during the hearing on Carr's motion to set aside the jury's verdict, is in the record.

[5] Carr testified that he had to respond to the scene of the tunnel accident until someone from the police or fire department arrived at the scene and confirmed that there was "nothing wrong." According to Carr, Rescue 1's tools may have been necessary even if the vehicles had been moved out of the tunnel.

Carr acknowledged that Rescue 1 had a "greater stopping distance than most passenger cars." He stated that he "let off the accelerator" when he received the additional information from dispatch, thereby engaging Rescue's 1 "check brake" or "engine retarder" and causing it to slow down. Carr also stated that he looked both ways before entering the intersection but conceded that he could not see the traffic light because of the sun and that he had been "unable to tell whether any vehicle traffic was coming from Ivy Avenue" because the house at the intersection obstructed his view. Carr explained that a vehicle had been stopped on the other side of the intersection on 16th Street but stated that he "didn't realize that [it was] stopped until it was too late." Carr said that he would have stopped if he had seen a red light but assumed "that the light was green." He added that he "hit the brakes" in the intersection when he first saw Lee's vehicle, but at 54,000 pounds Rescue 1 could not "stop on a dime."

Lee testified that he was driving with his car windows down before the accident and he did not "hear or see anything out of the ordinary" as he approached the intersection. He noticed that a couple of cars had stopped on eastbound 16th Street and drove into the intersection because he had a green light. Lee stated that he would have stopped if he had heard Rescue 1's siren.

Captain West testified that he sat in Rescue 1's passenger seat and did not see Lee's vehicle until "milliseconds before" impact. According to Captain West, Rescue 1's lights and siren were on when the accident occurred.[6] James Moss, the driver of the vehicle stopped on eastbound 16th Street, also testified that Rescue 1's lights and siren were on when it struck Lee. Moss had been stopped at the red light for approximately five or six seconds before the accident.

Dr. Wardell testified by video deposition that he treated Lee for two and a half years after the accident and had instructed Lee not to return to work as a construction worker. Dr. Wardell opined that, because of the accident, Lee suffered:

---

[6] Another firefighter riding on Rescue 1 also testified that its lights and siren were on.

> a lumber spine sprain which aggravated a pre-existing low back arthritis, a lumbar radiculopathy . . . a left hip sprain, a left trochanter bursitis or a left hip bursitis, a cervical spine sprain, neck sprain, a left shoulder sprain, a partial thickness tear of the rotator cuff of his right shoulder, a right ulnar neuropathy that has damaged the ulnar at the right elbow, a right median neuropathy that has damage to the median nerve at the right palm, and a left chest contusion.

Dr. Wardell further opined that several of Lee's injuries were permanent and that he could never work "in the construction field." During cross-examination, Wardell acknowledged that he had charged Lee "somewhere around $30,000," that Lee had an old "compression fracture on his spine," and that Lee had suffered from lower back pain "on and off for about 20 years."

Carr introduced testimony from Asia Gordon, a licensed nurse practitioner. Gordon testified that she treated Lee about a year before the accident, at which time Lee reported to her that he had suffered from intermittent back pain for approximately 20 years. Gordon also testified that Lee visited her several months after the accident, that his back pain "had progress[ed]," and that Lee complained of new pain to his neck, ribs, shoulders, buttocks, and legs. Gordon concluded that Lee's "chronic back pain had progressed significantly involving n[e]w nerve damage," which she agreed could have resulted from the accident.

Carr also presented testimony from Dr. Jude Kotsko. Dr. Kotsko examined Lee on the day of the accident and testified that Lee reported to him that he was having "left mid back pain" and "pain along the left side of his body." Dr. Kotsko added that Lee did not report any injury to his right hand, right wrist, or right fingers. According to Dr. Kotsko, Lee did not have any pain in his neck, had a normal range of motion in his neck, and refused pain medication. Dr. Kotsko diagnosed Lee with hypertension and a "muscle spasm of the back."

After deliberating, the jury returned a $500,000 verdict for Lee. Carr moved to set aside the jury's verdict, arguing that the evidence established he exercised sufficient care while driving Rescue 1 to defeat Lee's gross negligence claim as a matter of law. Carr emphasized that he used

Rescue 1's engine retarder to slow down, "looked in both directions" before entering the intersection, "braked to try to avoid the collision," and had activated Rescue 1's lights and siren.

The trial court granted Carr's motion. It found that Rescue 1's lights were on when the collision occurred. According to the trial court, it was also "uncontroverted" that Rescue 1's siren was on, although Lee "did not hear it . . . for some reason." The trial court also recognized Carr's testimony that he braked "towards the very end of the incident," kept "a lookout," and slowed "based upon the retarder mechanism." Lee appeals and Carr assigns cross-error.

ANALYSIS

I. Lee's challenge to the trial court's sovereign immunity ruling is waived.

On appeal, we presume the trial court's judgment is correct. *Bay v. Commonwealth*, 60 Va. App. 520, 528 (2012). The appellant bears the burden "to present to us a sufficient record from which we can determine whether the trial court has erred" as the appellant alleges. *Mintbrook Devs., LLC v. Groundscapes, LLC*, 76 Va. App. 279, 285 n.2 (2022) (quoting *Bay*, 60 Va. App. at 528). "When the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues, any assignments of error affected by such omission will not be considered." Rule 5A:8(b)(4)(ii).

Lee contends that the trial court erred by ruling that sovereign immunity barred his ordinary negligence claim. He concedes that Carr's "initial actions" in responding to the accident inside the tunnel "may very well have involved his use of discretion and judgment while embracing special risks." But, he insists, once Carr received additional information from dispatch, he no longer had "a genuine need . . . to operate[] the vehicle in any fashion other than ordinary driving in routine traffic." Lee asks this Court to reverse the trial court's finding that Carr "exercised his judgment and discretion in choosing to proceed expeditiously through the intersection."

"If the parties present evidence on [a] plea ore tenus, the circuit court's factual findings are accorded the weight of a jury finding and will not be disturbed on appeal unless they are plainly wrong or without evidentiary support." *Forest Lakes Cmty. Ass'n v. United Land Corp. of Am.*, 293 Va. 113, 117 (2017) (alteration in original) (quoting *Hawthorne v. VanMarter*, 279 Va. 566, 577 (2010)). Whether Carr exercised his judgment and discretion while driving is a question of fact. The record reflects that the trial court received evidence at the plea hearing and found, based on that evidence, Carr exercised his judgment and discretion. Yet the record does not include a transcript of the hearing or a written statement of facts in lieu of a transcript, so we cannot determine whether the trial court's factual finding was plainly wrong or without evidence to support it as Lee contends. Thus, we do not consider his argument on appeal. Rule 5A:8(b)(4)(ii).

II. The trial court erred by setting aside the jury's verdict on liability.

"The trial court's authority to set aside a jury verdict is limited and should be exercised 'only if a jury verdict is plainly wrong or without credible evidence to support it.'" *McGuire v. Hodges*, 273 Va. 199, 205 (2007) (quoting *Jenkins v. Pyles*, 269 Va. 383, 388 (2005)). When reviewing a circuit court's decision setting aside a jury verdict, "we will reinstate the verdict and enter judgment thereon if there is any credible evidence in the record that supports the verdict." *Cosby v. Clem*, 290 Va. 1, 2 (2015). "In making this determination, we give the recipient of the jury verdict the benefit of all substantial conflicts in the evidence, as well as the reasonable inferences that may be drawn from the evidence." *McGuire*, 273 Va. at 205.

Gross negligence is "a heedless and palpable violation of legal duty respecting the rights of others which amounts to the *absence of slight diligence*, or the *want of even scant care*." *Patterson v. City of Danville*, 301 Va. 181, 198 (2022) (quoting *Commonwealth v. Giddens*, 295 Va. 607, 613 (2018)). "Ordinarily, the question whether gross negligence has been established is a matter of fact to be decided by a jury. [Still], when persons of reasonable minds could not

- 8 -

differ upon the conclusion that such negligence has not been established, it is the court's duty to so rule." *Elliott v. Carter*, 292 Va. 618, 622 (2016) (quoting *Frazier v. City of Norfolk*, 234 Va. 388, 393 (1987)). "Because 'the standard for gross negligence [in Virginia] is one of indifference, not inadequacy,' a claim for gross negligence must fail as a matter of law when the evidence shows that the defendant[] exercised some degree of care." *Id.* (first alteration in original) (quoting *Kuykendall v. Young Life*, 261 Fed. Appx. 480, 491 (4th Cir. 2008)).

Lee contends that the trial court erred by setting aside the jury's verdict because the evidence did not conclusively establish that Carr exercised any care to prevent the accident. We agree.

The trial court identified five acts of care that it found Carr took to prevent the accident: (1) Carr used the engine retarder to slow Rescue 1, (2) Carr kept "a lookout" when approaching the intersection, (3) Carr braked "towards the very end of the incident," (4) Carr activated Rescue 1's siren, and (5) Carr activated Rescue 1's lights. Yet the evidence about the first four acts of care was in conflict. Although Carr testified that he slowed Rescue 1 to between 20 and 25 miles per hour with the engine retarder, Officer Holden's testimony shows that Rescue 1 was traveling at about 39 miles per hour when it entered the intersection against the red light. Similarly, Carr's claim that he kept a lookout is contradicted by his admission that he could not see southbound traffic on Ivy Avenue because a house obstructed his view and that he could not see the red light because of the sun. The evidence also supports the conclusion that even if Carr "hit the brakes" *after* he entered the intersection, doing so did not reduce the likelihood of an accident because Rescue 1 weighed 54,000 pounds and could not "stop on a dime."[7] The video

---

[7] We note that the video recording played at trial shows that Carr "hit the brakes" after both vehicles were in the intersection and less than a second before colliding with Lee's vehicle. The jury was free to conclude that the braking was in response to the imminent collision rather than an exercise of caution before entering the intersection.

recording played at trial showed that the brake lights of Rescue 1 came on after both vehicles were in the intersection and less than a second before colliding with Lee's vehicle. The jury was free to conclude that the braking was in response to the imminent collision rather than an exercise of caution before entering the intersection. For these reasons, the jury would not have been plainly wrong in finding that Carr did not look for southbound traffic on Ivy Avenue or slow Rescue 1 *before* entering the intersection to prevent the risk of an accident.

Finally, the trial court found that it was uncontroverted that Rescue 1's siren was on at the time of the collision. On appeal, Carr insists that the evidence conclusively established that Rescue 1's siren was on when the accident occurred. Carr argues that Lee's testimony that he did not hear any siren as he approached the intersection did not refute the testimony of other witnesses that Rescue 1's siren was on at the time of the accident.

"It is true that 'the positive testimony of a credible witness, who testifies that he saw or heard a particular thing at a particular time, ordinarily outweighs that of a number of other witnesses, equally credible, who, with the same opportunities, testify merely that they did not see or hear it.'" *Nat'l Union Fire Ins. Co. v. Bruce*, 208 Va. 595, 598 (1968) (quoting *S. Ry. Co. v. Barden*, 200 Va. 98, 102-03 (1958)). "Mere bare negative testimony is entitled to no weight in the presence of affirmative evidence to the contrary." *Norfolk & W. Ry. Co. v. Greenfield*, 219 Va. 122, 130 (1978).

> But if there is evidence that the one who denies the fact had good opportunity to see or hear, and the evidence demonstrates that he probably would have seen or heard the event if it had occurred, or it is shown that his attention was drawn to the matter controverted, then such testimony constitutes positive testimony, and produces a conflict of evidence to be decided by the trier of fact.

*Id*. at 130-31.

The evidence supports a finding that Lee "probably would have" heard Rescue 1's siren if it was on when Carr approached the intersection. *Id.* Indeed, the jury could have found that

Lee had a good opportunity to hear whether Rescue 1's siren was on because his car windows were down when he approached the intersection and he testified that he would have stopped if he heard the siren. Accordingly, the jury was not plainly wrong in finding that Rescue 1's siren was not on.

For all these reasons, the only uncontroverted evidence of a potential act of care was Carr's activation of Rescue 1's lights, which Lee concedes were on. Lee argues, however, that Rescue 1's lights were "not relevant" as a "warning device" because Carr knew the intersection was obstructed and that the lights would not have been visible to southbound traffic on Ivy Avenue. We agree.

The grossly negligent act in this case was Carr's decision to drive Rescue 1 through a traffic light-controlled intersection at a rate of speed above the posted speed limit despite his inability to see traffic that had the right of way. Therefore, the issue before the trial court when determining whether to set aside the jury's verdict was whether Carr exercised slight diligence or scant care in proceeding with his action. *See Patterson*, 301 Va. at 198. Carr explained that the purpose of Rescue 1's lights was "[t]o announce that we're coming through or that we're in their way and that we're asking for right of way." But Carr knew that Rescue 1's lights were not visible to southbound traffic on Ivy Avenue. Indeed, neither Carr nor Captain West saw Lee until just before the collision. It follows that Carr did not exercise any care for the duty he owed to those traveling southbound on Ivy Avenue by turning on lights because motorists, like Lee, could not have seen them in time to yield the right of way. *See Frazier*, 234 Va. at 393 (defining gross negligence as "that degree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another").

The question of whether Carr exercised any care was a factual one for the jury and credible evidence supports its verdict. In best light to Lee, Carr sped the 54,000 pound firetruck into an

- 11 -

intersection without even knowing whether the light was red or green—or whether any vehicle was in its path. According to Lee, there was no siren—and the video supports the jury's view that there was no effort to brake upon entering the intersection (or at any meaningful time before imminent contact).

The trial court erred by usurping the jury's judgment because the evidence failed to conclusively establish that Carr took any care to prevent Lee's accident. In short, the trial court relied on its findings of fact rather than the findings of fact made by the jury. In doing so, it erred. Accordingly, we reinstate the jury's verdict on liability. *Cosby*, 290 Va. at 2. As explained below, however, we must still vacate the jury's award of damages and remand for a new trial on that issue.[8]

III. The trial court erred by excluding part of Dr. Wardell's testimony.

Determining "the 'admissibility of evidence is within the discretion of the trial court,' and an appellate court will not reject such decision absent an 'abuse of discretion.'" *Williams v. Commonwealth*, 71 Va. App. 462, 487 (2020) (quoting *Tirado v. Commonwealth*, 296 Va. 15, 26 (2018)). "The abuse of discretion standard draws a line—or rather, demarcates a region—between the unsupportable and the merely mistaken, between the legal error . . . that a reviewing court may always correct, and the simple disagreement that, on this standard, it may not." *Jefferson v. Commonwealth*, 298 Va. 1, 10-11 (2019) (alteration in original) (quoting *Reyes v. Commonwealth*, 297 Va. 133, 139 (2019)).

Carr assigns cross-error to the trial court's ruling excluding Dr. Wardell's deposition testimony that Lee agreed to use a judgment in his favor to satisfy his medical debt. Carr

---

[8] As we reinstate the jury's verdict on liability, we do not address whether the circuit court erred by excluding the Directive. *See Thomas v. Commonwealth*, 303 Va. 188, 198 (2024) ("The doctrine of judicial restraint dictates that generally we decide cases 'on the best and narrowest grounds available.'" (quoting *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4 (2010))).

emphasizes that Dr. Wardell's testimony did not mention Lee's Medicaid insurance and simply showed that Dr. Wardell had a financial interest in the outcome of the case relevant to potential bias. We agree.

The trial court "has discretion to limit the scope of cross-examination." *Sawyer v. Comerci*, 264 Va. 68, 78 (2002). "That discretion, however, is not without limitations, and a litigant has a right to establish that a witness is biased." *Id.* Indeed, "[t]he bias of a witness is always a relevant subject of inquiry when confined to ascertaining previous relationship, feeling and conduct of the witness." *Henning v. Thomas*, 235 Va. 181, 188 (1988) (quoting *Henson v. Commonwealth*, 165 Va. 821, 826 (1936)). "[G]reat latitude is allowed" during cross-examination and "the general rule is that *anything tending to show the bias on the part of a witness may be drawn out*." *Id.* (quoting *Henson*, 165 Va. at 826).

Dr. Wardell did not simply testify that Lee owed him money for medical services as the trial court suggested. Instead, Dr. Wardell testified that he had asked Lee to execute a contract assigning an interest in proceeds that Lee received "from this case" and that Lee agreed to do so. In other words, Dr. Wardell conceded that he had a financial interest in the outcome of this case.

Lee insists that his assignment of proceeds "would necessarily improperly inject insurance before the jury" based on its terms. Yet Lee also acknowledges that a copy of the assignment is not included in the record. Moreover, Dr. Wardell's testimony does not, on its face, force Lee to testify regarding his insurance coverage. It simply recognizes that Lee's medical debt is outstanding and that he executed the assignment of proceeds.

A defendant has a right "to attempt to persuade the jury that [a doctor] was a 'doctor for hire.'" *Henning*, 235 Va. at 188. The trial court erred by denying Carr his right to do so here. Moreover, we cannot say that the error was harmless in this case. Had Carr been allowed to introduce Dr. Wardell's testimony showing his financial interest in the outcome, the jury may have

discounted Dr. Wardell's testimony and reduced its award of damages.  Therefore, the trial court's error was not harmless, and we vacate the jury's award of damages.  *See Barkley v. Wallace*, 267 Va. 369, 374 (2004) ("In a civil case, the erroneous exclusion of evidence is reversible error when the record fails to show plainly that the excluded evidence could not have affected the verdict.").  Thus, we remand the case for a new trial limited to the question of damages.  *See Sampson v. Sampson*, 221 Va. 896, 903 (1981).

## CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

*Affirmed in part, reversed in part, and remanded.*

Malveaux, J., concurring in part, and dissenting in part.

I agree with the majority's holdings with respect to the erroneous exclusion of Dr. Wardell's testimony and Lee's waiver of the sovereign immunity issue. But I disagree with its holding that the circuit court erred by setting aside the jury's verdict as to Carr's liability for gross negligence.

When reviewing a circuit court's decision setting aside a jury verdict, we reinstate the verdict only "if there is any credible evidence in the record that supports the verdict." *Cosby v. Clem*, 290 Va. 1, 2 (2015).

Gross negligence is "a heedless and palpable violation of legal duty respecting the rights of others which amounts to the *absence of slight diligence*, or the *want of even scant care*." *Patterson v. City of Danville*, 301 Va. 181, 198 (2022) (quoting *Commonwealth v. Giddens*, 295 Va. 607, 613 (2018)). Its well-settled definition is replete with superlatives: it is "a degree of negligence showing . . . an *utter* disregard of prudence that amounts to a *complete* neglect of the safety of such other person." *Elliott v. Carter*, 292 Va. 618, 622 (2016) (emphasis added) (quoting *Cowan v. Hospice Support Care, Inc.*, 268 Va. 482, 487 (2004)). "[T]he standard for gross negligence [in Virginia] is one of indifference, not inadequacy." *Id.* (second alteration in original) (quoting *Kuykendall v. Young Life*, 261 Fed. Appx. 480, 491 (4th Cir. 2008)). As such, "[a] claim for gross negligence must fail as a matter of law when the evidence shows that the defendants exercised some degree of care." *Patterson*, 301 Va. at 198 (quoting *Elliott*, 292 Va. at 622). In other words, evidence that a defendant exercised any degree of care, however slight, will defeat a claim of gross negligence. *See id.*; *Colby v. Boyden*, 241 Va. 125, 133 (1991) (holding that, based on stipulated evidence that a defendant exercised "'some degree' of care for the safety of others," the plaintiff had failed to establish a prima facie case of gross negligence).

The majority points to purported conflicts in the evidence regarding several actions that the circuit court found Carr took to prevent the accident, and concludes that, because those conflicts presented factual issues to be resolved by the jury, the circuit court erred in setting aside the jury's verdict. But as the majority correctly recognizes, the evidence that Carr had activated Rescue 1's lights was uncontroverted.[9] And in Virginia, uncontroverted evidence that Carr exercised "some degree of care" is adequate to defeat Lee's gross negligence claim. *Patterson*, 301 Va. at 198. So even absent additional evidence of care, this evidence is sufficient for us to affirm the circuit court's judgment.

But there was also no dispute that Carr took two additional steps demonstrating at least some degree of care: he activated Rescue 1's siren as a "warning" to oncoming traffic "[t]o announce that [he was] coming through or that [he was] in their way and . . . asking for right of way," and he applied Rescue 1's brakes. Regarding the brakes, Carr testified that he "hit the brakes" when he first saw Lee's vehicle and that he did so when he was already in the intersection. And while reviewing the video footage, Officer Holden testified that the brake lights appeared to be on when Rescue 1 entered the intersection. Neither the video footage nor any witness testimony refuted the testimony that Carr had applied Rescue 1's brakes. So while the majority finds a conflict in the evidence about why Carr applied the brakes, i.e., whether he braked proactively or reactively, under no pertinent authority is Carr's reason for braking a relevant consideration. Nor is it relevant whether Carr applied the brakes before or after entering the intersection: in the absence of any evidence that he did not brake at all, either would be

---

[9] The majority agrees with Lee's contention that Carr's activation of the lights was not relevant because Carr knew that the lights would not have been visible to oncoming traffic. But under Virginia's gross negligence standard, the question is whether the defendant himself took any action evidencing "slight diligence" or "scant care" on his part, *Patterson*, 301 Va. at 198, not whether that action would have any specific effect. In other words, when considering Carr's liability for gross negligence, it matters only that he activated the lights "to announce" his impending presence as a "warning" to oncoming traffic.

sufficient to prove that he exercised the "slight diligence" and "scant care" necessary to defeat Lee's gross negligence claim. *Patterson*, 301 Va. at 198.

Regarding the siren, the majority focuses on Lee's agreement that he did not "hear or see anything out of the ordinary" as he approached the intersection. It contends that this creates a conflict with the otherwise uncontroverted testimony of Carr, West, and another occupant of Rescue 1 that Carr had activated the siren. In support, the majority cites *Norfolk & W. Ry. Co. v. Greenfield*, 219 Va. 122, 130 (1978), for the proposition that, because Lee testified that his car windows were down and he would have stopped if he had heard the siren,[10] his agreement constitutes "positive testimony" that created a conflict of evidence as to whether the siren was on. But Lee did not "den[y] the fact" that the siren was on. *Id.* In fact, he did not reference the siren at all; he merely agreed that he did not hear anything "out of the ordinary." "The statement of a witness that he did not hear . . . a signal is without value as evidence, unless it further appears that he was in a position to hear, was attentive, and that the conditions were such that he would probably have heard such signal . . . had [it] been sounded." *White v. S. Ry. Co.*, 151 Va. 302, 314-15 (1928) (quoting *Chi. & Rock Island Ry. Co. v. Still*, 71 Am. Dec. 236 (1858)). Here, not only did Lee not deny hearing the siren, the mere fact that his windows were down does not demonstrate that he "was attentive." *Id.* at 315. Our caselaw requires that these conditions be met in order for Lee's testimony, which is otherwise "negative testimony" that is "entitled to no weight," to be eligible for transformation into "positive testimony" that the siren was not on. *See Greenfield*, 219 Va. at 130; *see also S. Ry. Co. v. Bryant's Adm'r*, 95 Va. 212, 216 (1897) ("[W]here a witness, who denies a fact in question, had as good opportunity to see or hear it as

_____

[10] Lee also did not specifically testify that he would have heard the siren if it were on. *See State & City Bank & Tr. Co. v. Norfolk & W. Ry. Co.*, 144 Va. 185, 190 (1926) (holding that the testimony, "[w]e were so close if the bell had been ringing we would have heard it," combined with that of "other witnesses who testified that they did not hear the bell ring," was "sufficient to carry the question to the jury").

he who affirms it, and his attention, because of special circumstances, was equally drawn to the matter controverted," his "denial . . . constitutes positive evidence" and "produces a conflict of testimony" with the affirming witness); *Virginian Ry. Co. v. Bacon*, 156 Va. 337, 348 (1931) (analyzing a person's testimony that he "was listening for a locomotive whistle, and that none was sounded," as well as the statement of another person that "no crossing signal was given," and concluding that both statements, though "negative in form, [were] positive in substance"); *Nat'l Union Fire Ins. Co. v. Bruce*, 208 Va. 595, 598 (1968) (holding that witnesses' testimony "that they did not see any [oncoming] lights or any traffic" was "positive in character").

For these reasons, I would hold that the circuit court properly set aside the jury's verdict in favor of Lee on his gross negligence claim, because there was no credible evidence in the record to support a finding that Carr's actions did not demonstrate at least "some degree of care." *Patterson*, 301 Va. at 198. Accordingly, I respectfully dissent.