[No. 10565. Department One. December 12, 1912.]

DANIEL L. SLIPPER, *Respondent*, v. SEATTLE ELECTRIC COMPANY, *Appellant*.[1]

STREET RAILWAYS—INJURIES TO PEDESTRIANS—CONTRIBUTORY NEGLIGENCE—EVIDENCE—SUFFICIENCY. A pedestrian, struck by a cable car, is guilty of contributory negligence, as a matter of law, where it appears that he started diagonally across a street, paying no attention to a street car, which was in plain view and making considerable noise, nor to warning shouts; and he is not exonerated by the fact that he was slightly deaf, and from the country, and not used to street cars.

SAME—NEGLIGENCE—LAST CLEAR CHANCE—EVIDENCE—SUFFICIENCY. The evidence of a gripman that he could have stopped a cable car within five or six feet and in time to avoid an accident to

[1]Reported in 128 Pac. 233.

a negligent pedestrian, if the brakes had not been defective, does not warrant a finding that the defendant had the "last clear chance" to avoid the accident, where it appears from other evidence that the car, a heavy cable car thirty feet long, going down grade at a rate of 14 feet per second, was stopped within fifteen or twenty feet, an emergency stop required the movement of two levers taking two or three seconds, and there was expert evidence that it could not have been stopped inside of from 30 to 60 feet, and the car had been operated all day and nothing found to be the matter with the brakes, since a "good stop" was shown; especially since a quicker stop might have endangered the passengers.

Appeal from a judgment of the superior court for King county, Myers, J., entered February 27, 1912, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a pedestrian struck by a street car. Reversed.

*James B. Howe* and *A. J. Falknor*, for appellant.

*Kellogg & Huntoon*, for respondent.

CHADWICK, J.—Daniel Slipper, an elderly man, slightly deaf, was crossing Madison street in the city of Seattle, and was struck by a cable car operated by defendant. He brought this suit, alleging negligence of the defendant, in "that at the time of said accident and for several days prior thereto, the brakes upon such cable car were out of order and in a defective and unworkable condition, and that this fact at the time of the accident and for several days prior thereto was well known to the defendant and its agents and employees." Negligence is also alleged in that the car was overcrowded, so that the gripman could not see the street in front and on the sides of the car. There was hardly a pretense of proving this charge; and inasmuch as the gripman testified that he saw plaintiff in time to avert the accident but for the defective brakes, we regard the last charge of negligence as of no consequence. Plaintiff stepped from the curb on Madison street and started diagonally to the south and west. Just as he started, a wagon passed and he

waited for it to get out of the way. It may be that the noise of the wagon obscured the sound of the cable at the time he left the curb; at any rate, he says he did not hear it. He paid no attention to the car, which was coming west, although there was nothing to obscure his view for at least a block and possibly a greater distance. The gripman observed him when he was eight or ten feet away and then, seeing that plaintiff was apparently oblivious of the presence of the car, shouted to him, as others probably did. He threw on the brakes, but the right front corner of the car struck plaintiff, threw him to the ground, and rolled him under the running-board, from which position he was extricated by pushing the car back so as to clear the running-board. Other facts must necessarily be referred to in the body of our opinion and will not be noticed here. From a verdict in favor of the plaintiff, defendant has appealed.

Appellant interposed a motion for a nonsuit and other timely motions and objections during and after the trial, in order to save its defense, which was that plaintiff was injured in consequence of his own negligence. Counsel for respondent insists that he was not negligent because of the facts following, all of which were proved in a way upon the trial: That the plaintiff was an elderly man; that he had lived all of his life in small towns in which there were no street cars; that he had been in Seattle only five months; that during that time he had not used the street cars at all; that he had never been in that part of the city where the accident occurred; that it was a residence district, and consequently not subject to heavy traffic; that he stopped and waited for a vehicle to pass, showing that he was cautious; that he looked in the direction the car came from before leaving the curb; that he did not know that there was a car line on Madison street; that he did not discover it until he was practically upon the track.

If these facts, severally or collectively, exonerate respondent, then it must be written into the law that the pedestrian

upon a city street no longer owes a duty to himself. He should have been to some extent at least, mindful of his own safety. The cable makes quite a noise and the car makes an even greater noise. The track itself was a sign and warning of danger; it was under his eye and must have been seen if he was looking in the direction in which he was going. He could not assume that the gripman could have known of his infirmity or his lack of knowledge of the ways of the city. It would seem that a man from the country would be the more impressed with the objects and dangers of the street than one who, because of greater familiarity, might become careless and oblivious thereto. More than this, the fact that a man is approaching a street car track and is from four to eight feet away is not in itself a warning to the motorman or gripman, or notice to him that a pedestrian will endeavor to pass in front of the car. It is a matter of common knowledge that men will stop when within a few feet or quite abreast of a passing street car. Up to a certain point, to be measured by the facts of the particular case, a gripman has a right to assume that a pedestrian is exercising and will continue to exercise due care.

We have said that there is no duty upon the pedestrian to stop, look, and listen before crossing a street car track (*Morris v. Seattle, Renton & Southern R. Co.*, 66 Wash. 691, 120 Pac. 534, and cases there cited) ; but we have never said, nor has any court, that a pedestrian is not required to exercise reasonable and ordinary care, prudence and vigilance to avoid a collision. *Helliesen v. Seattle Elec. Co.*, 56 Wash. 278, 105 Pac. 458.

But granting that plaintiff did not have to stop or look, there was the noise of the car which was in his immediate presence, the cable, the bell and the shouts, all of which should have been heard and should have summoned him from his abstraction. He might continue in motion; he might close his eyes; but his ears were open and, though slightly deaf, there is no evidence tending to show that he could not

hear ordinary sounds and conversation. We have no doubt of respondent's contributory negligence, and so hold.

The only remaining question is whether a recovery can be had because of the alleged negligence of the appellant. It is contended that all we have said may be true, but inasmuch as the gripman testified that the brakes on the car were out of repair and that he could have stopped the car but for that reason, that the verdict must be sustained. The doctrine of last clear chance is not discussed in the briefs, nor was it referred to in the argument; neither have we the instructions of the court. But assuming, without discussing or admitting, that respondent can maintain his recovery without relying upon that doctrine, we shall proceed to inquire whether the defective brakes—we must find that they were so, because the jury so found, although it seems to us to be in the teeth of a great preponderance of the evidence—was the proximate cause of the injury. The gripman, who is no longer in the employ of the appellant, testified that he could have stopped in time to avoid the accident, if the brakes had been in good order; that he had told the barn foreman at 7 o'clock in the morning that the brakes were defective. The accident occurred at 3:18 in the afternoon. The gripman signed a written report of the accident. There was no mention made in that report of the defective brakes, but a supplemental report was made later in the day in which he stated that the brakes were defective. There is no evidence tending to show wherein they were defective, except that "they would not hold, some way." There was expert testimony tending to show that a car 30 feet long, going the speed of the cable, which was approximately 10 miles an hour or 14 feet per second of time, could not be stopped inside of 30 feet, and from that to 60 feet. To make an emergency stop, the gripman had to throw two levers. He estimates that it would take two or three seconds to do this. It is obvious that it would take that long, probably longer. He says he stopped his car in from 15 to 20 feet. Was it

a good stop, or such a stop as might be expected had the
brakes been in order? We think it was. Passengers and
bystanders say the car stopped "remarkably quick, I would
have said it was remarkable the way he stopped the car so
quickly. . . . How quick did the car come to a stop?
It was between 10 and 15 feet it went. . . . How far
did the car go after it struck the man? I don't know, I
think about 10 feet. My impression was that he did well
in stopping in such a short time, remarkably well. . . .
How far did the car go after it struck him? Maybe 10 feet,
15 feet, not over 15 feet." And the gripman who was the
principal witness in behalf of respondent says on direct ex-
amination: "Now after striking Mr. Slipper how far did
the car go before you could get it under control? It must
have been from 15 to 20 feet." In his written report made
at the time of the accident, and which was confirmed by the
witness when under cross-examination, he says: "The car
went 5 or 6 feet after striking the man." It seems to us
that we are not bound to accept the statement of the grip-
man that he could stop a big, heavy car, 30 feet long, mov-
ing on a down grade at the rate of 14 feet per second of
time, in five or six feet—the reach of a man's arms—and re-
ject all common knowledge and utterly defy all physical
facts. If he stopped in 15 or 20 feet, this must of neces-
sity be nearer the truth. It might have been a greater dis-
tance without implying negligence under the weight of the
evidence, or we might say the only evidence covering the
technical problems involved. The car had been operated all
day; another gripman had made two round trips at noon,
and testifies that he found nothing wrong with the brakes.
Although we may assume that the brakes did not always set,
they must have worked a greater part of the time; and from
the whole record we do not hesitate in concluding that they
did work at the time of the accident. The gripman having
made a "good stop," the appellant, through him, did its
whole duty, and cannot be charged with negligence.

There is another item that may be considered. Accepting the statement as true that the car could have been stopped in five or six feet, we may well ask ourselves whether appellant would not have put the passengers on the car to as great, if not greater, hazard than was the respondent. A carrier must exercise reasonable care to protect pedestrians; it owes the highest degree of care to its passengers. It cannot fulfill the latter duty, nor does the law require it, in an emergent situation, if it stands a car loaded with passengers on end. We are impressed in this case with the words used in the case of *Borg v. Spokane Toilet Supply Co.*, 50 Wash. 204, 96 Pac. 1037, 19 L. R. A. (N. S.) 160:

"Had the appellant been the superior force in this instance, causing the injury to the respondent or to some third person, there could be no question as to his negligence."

The case of *Dimuria v. Seattle Transfer Co.*, 50 Wash. 633, 97 Pac. 657, 22 L. R. A. (N. S.) 471, we think is directly in point; as is also the case of *Plinkiewisch v. Portland R. Light & Power Co.*, 58 Ore. 499, 115 Pac. 151. It was held in the *Dimuria* case that the party injured was guilty of contributory negligence, precluding a recovery, in failing to look for approaching teams, or to take any other precautions for his personal safety.

The judgment of the lower court is reversed, with instructions to enter a judgment for the appellant notwithstanding the verdict.

MOUNT, C. J., GOSE, CROW, and PARKER, JJ., concur.