# Staunton.

## BETTIE COOPER, ADMINISTRATRIX OF EDWARD S. BLAIR, DECEASED v. SOUTHERN RAILWAY COMPANY.

September 19, 1929.

Absent, West, J.

The opinion states the case.

*Vance S. King* and *R. E. L. Chumbley*, for the plaintiff in error.

*Pennington & Cridlin* and *Thomas B. Gay*, for the defendant in error.

PRENTIS, C. J., delivered the opinion of the court.

This is an action against the Southern Railway Company in which the plaintiff seeks to recover for the death of Edward S. Blair, alleging that it was caused by the negligence of the defendant.

Upon the first trial there was a verdict for the plaintiff, which the trial court set aside. Upon the second trial, the plaintiff offered no additional testimony, but relied upon that offered at the first trial, and there was a verdict and judgment in favor of the defendant, to which a writ of error has been allowed.

A number of questions as to the procedure have been raised by the defendant. One of them certainly is serious in character, but as the judgment upon the merits in its favor is plainly right, we shall not discuss the procedure.

The errors assigned by the plaintiff are: (1) That the court erred in setting aside the first verdict in her favor, and (2) in overruling her motion to set aside the second verdict in favor of the defendant. These assignments present the same question, and that is whether the evidence, which is identical on both trials, is sufficient to support a verdict in favor of the plaintiff.

It is claimed here that the first verdict should not have been set aside because the evidence established

the fact that Edward S. Blair was killed "on the highway crossing as a result of the defendant's negligent failure to sound the statutory signals." We cannot sustain this contention because there is no evidence to support it.

■ (a) There is no evidence that Edward S. Blair was killed either on or at the crossing. He was killed apparently by a train which passed between eleven and twelve o'clock in the night. His severed body was found some distance away from the crossing early on the following morning. He was seen by two witnesses on the highway about one hundred yards from the crossing. Another witness, driving on the highway towards the crossing, saw a train approaching, stopped to let it pass, and saw "some fellow on the railroad track somewhere near the crossing." Immediately afterward, he said, in reply to this question:

"Q. Where was this fellow that you saw?

"A. I do not know; I could not say exactly who he was on about at the crossing somewhere."

That he (witness) was watching the train, not looking at the crossing; was watching the head-light of the train; that he did not see the man on the crossing and does not know that he went on; that he was looking at the train with nothing to prevent his seeing; and concludes his inconsistent testimony by saying that he was "somewhere near the crossing." There were five others in the automobile with this witness. One only of these testified, in substance, that he saw a man going in the same direction, crossing the track but did not see the train strike him. The trainmen testified that they saw no one and struck no one that night on or near the crossing. There was no indication that any one had been struck at the crossing and dragged away from it to the point where the body was found.

These physical facts seem to demonstrate that the person at or near the crossing was not struck there. The freight train was moving slowly at not more than fifteen miles an hour. Thirty-three feet from the middle of the highway there was a cattle guard across the track, from which iron spikes about three inches apart projected upward from "V" shaped pieces of wood, the tops of these spikes being two inches below the top of the rails, and the pilot of the engine being four inches above the rails. There were no indications at either the crossing or the cattle guard, either on the dead man's body or clothing, that he had been dragged along the railroad track from the crossing to the point where he was apparently killed. This point is variously estimated at from seventy-five to 200 feet. It was shown by actual measurement to have been 187½ feet. No blood was found on the engine, but blood was found on the ties and rails a few feet away from the point at which the severed body was found. The suggestion that the deceased had boarded the train and that he lost his hold and fell between two cars accords better with the physical facts than that he was struck on the crossing. The plaintiff failed to show that the decedent was struck on or at the crossing.

■ (b) The testimony does not show that the defendant failed to sound the required statutory signals. Several witnesses testified that they heard none, but not one of them claimed to be listening, or testified to a single circumstance which could justify a jury in finding the essential fact that the trainmen were guilty of the negligence charged. This testimony is negative and presents no conflict with the positive testimony of the engineman, the fireman and the brakeman that the required signals were given. On this point the case is controlled by the principles stated

in *C. & O. Ry. Co.* v. *Bullington's Admr.*, 135 Va. 307, 116 S. E. 237, and in *White* v. *Southern Railway Co.*, 151 Va. 302, 144 S. E. 424.

The testimony fully supports the second verdict in favor of the defendant company.

*Affirmed.*