[No. 27490.   Department Two.   August 16, 1939.]

H. O. POLAND, *Respondent,* v. THE CITY OF SEATTLE, *Appellant.*[1]

*A. C. Van Soelen* and *John A. Logan,* for appellant.

*Bailey, Heussy & Clarke* and *Paul Lemargie,* for respondent.

[1]Reported in 93 P. (2d) 379.

SIMPSON, J.—Plaintiff instituted this action to recover compensation for personal injuries sustained by him when he was struck by a Seattle street car. The charges of negligence on the part of the motorman who was in charge of the operation of the street car at the time of the injury, are that he was operating the car without watching for traffic in the front thereof and at a dangerous and excessive rate of speed, in excess of thirty-five miles per hour; that the front lights of the street car were out; that he failed and neglected to apply the brakes or to sound any warning when he saw or should have seen plaintiff in front of the car; and further that he neglected to operate the street car carefully and prudently, or to accord the users of the crosswalks their rights. Defendant denied the charges of negligence and, by way of affirmative defense, alleged that plaintiff's damages, if any, were caused and contributed to by his own carelessness and negligence.

The case was tried to a jury, and resulted in a verdict in favor of plaintiff.

At the close of plaintiff's case, defendant moved for a nonsuit. A motion for a directed verdict was also made at the proper time. After a verdict had been returned, defendant moved for a judgment notwithstanding the verdict and, without waiving that motion, in the event it were denied moved for a new trial. The motions were denied, and judgment was entered in favor of plaintiff. The city appeals.

The facts most favorable to plaintiff may be summarized as follows: Appellant owns and operates a double track street railway system, a part of which runs in a northerly and southerly direction along the west shore of Lake Union. Westlake avenue proper is physically separated from, but is immediately adjacent to, the area occupied by the street car tracks. The

paved area of the street is double the width of the usual pavement with a dirt strip in between, and there is a curb three inches high along the easterly boundary of the pavement. East of this curb is an unpaved area along the lake, in which is located a double track for street cars. This area is not open for vehicular travel, and the rails, ties, and ballast of the track are open and uncovered as on the ordinary railway track. Northbound cars travel on the easterly track, and southbound cars travel on the westerly track.

At the place where the accident occurred, Newton street intersects Westlake avenue, but does not extend over or across the street car tracks. At this point in the track area, two loading and unloading platforms have been constructed parallel to the tracks, each six feet wide and sixty feet long. One platform is located between the curb at the new pavement edge and the west rail of the westerly track; the other is east of the easterly track. There is a crosswalk at both ends across the tracks connecting the two platforms. There is also a wood guardrail along the curb separating the paved street from the west platform, with an entrance at the north end thereof. Eighteen feet north of the northerly end of the platform is a sixteen-foot crosswalk utilized for vehicular traffic from the east side of Westlake avenue. Approximately 150 feet easterly of the northbound tracks is the shore of Lake Union, upon which lake are constructed numerous houseboats. On the southwest corner of Westlake avenue and Newton street is constructed a gasoline service station.

Between five and six o'clock in the afternoon of February 10, 1938, respondent alighted from a taxicab opposite the houseboats and walked across the tracks in an easterly direction to a houseboat occupied by Mr. Kelly. Respondent remained at this friend's house

until about ten o'clock, at which time he crossed the track to the gasoline station. After remaining at the station for a short time, he thought he saw some friends approaching along Westlake avenue in an automobile and who crossed the street car tracks and stopped at a point between the easterly tracks and Lake Union. Respondent crossed Westlake avenue to its easterly side and stopped at the railing which separated the highway from the street car tracks. At this point, he looked to the right and left, but stated he did not see any street car. He then proceeded to walk in an easterly direction on the pedestrian crossing. His vision and hearing were very good. Respondent testified that the evening was clear, the visibility very good, and he could see along the track a distance of 180 feet. After taking three or four steps east of the guard rail, he was hit by a southbound street car.

There was evidence to the effect that the street car was going at a speed of forty-five miles per hour, that no bell was rung or brake applied before respondent was struck. There was an absence of evidence on the part of respondent's witnesses concerning the headlights on the street car just prior to or at the time of the impact. None of them noticed whether or not a headlight was burning. Witness Frye was standing on the east side of the street car track at the time of the accident. When asked about the lights on the front of the car, he said:

"I don't know, I couldn't say either one, I don't know which is right, it is just one of those things, I don't remember whether it was dark or light, because in a position like that, when you are looking at somebody about to get hit, you don't know whether there are lights."

Later, on cross-examination, he gave the following testimony:

"Now, Mr. Frye, not the headlight on the street car, but was the street car otherwise lighted? A. Yes, it was. Q. And how fully lighted was it, just describe to the jury what lights the street car had? A. Well, I don't know, just like any other street car would be at night, just looked lighted was all. Q. Fully lighted? A. I don't know, just looked lighted. I don't know whether any lights were missing, just looked lighted to me."

Witness Evans was in an automobile waiting for respondent and didn't see the street car until it struck respondent, and when asked about the lights, said: "Well, if there was a light on it I never saw it." When cross-examined, he said the inside lights on the car were burning.

Witness Gilbertson was standing at the front of the automobile waiting for respondent. She gave the following testimony on direct examination:

"Q. And when you saw the street car, it was approximately at the automobile crossing? A. You know, when you look at something and you glance at something out of your right eye causes you to know that something was coming—well, I saw it. I didn't see it further to the right of me, and I just saw it out of the corner of my eyes in that quick glance. . . . Q. Now, did you notice the front end of the street car, Mrs. Gilbertson? A. Oh, I seen it like I say. I saw it a little to my right before I was even with it. I wouldn't know how many feet out there. I saw it a little to my right like that as I kind of half turned and glanced back at him again. Q. Did you notice whether or not the light was burning? A. I didn't notice any light. If there was one burning, I didn't see it."

The passengers getting on the car at Seventy-third avenue and Greenwood, Sixty-second avenue and Phinney, Fifty-ninth avenue and Phinney, and Forty-third avenue and Fremont, all testified that the headlight was burning when they boarded the car, and one passenger testified that the light above the car door

was burning at the time of the accident. The motorman was certain that all the lights on the car were burning, including the headlight. All witnesses who examined the headlight after the accident were agreed that the outer glass was broken, and the motorman explained that its condition was caused by hitting respondent.

For the purposes of this case, we will assume without deciding the negligence of the motorman in operating the street car. In approaching the question of respondent's contributory negligence, we have in mind that:

"The questions of negligence and contributory negligence, where the evidence is conflicting, is always a question for the jury, has been held in so many cases that it is unnecessary to cite them." *Crowe v. O'Rourke*, 146 Wash. 74, 262 Pac. 136.

"It has long been the rule of this court that, before a court will be justified in taking from the jury the question of contributory negligence, the acts done must be so palpably negligent that there can be no two opinions concerning them." *Walters v. Seattle*, 97 Wash. 657, 167 Pac. 124.

Was there sufficient competent evidence to show that the headlight on the street car was not burning as it approached the crosswalk upon which respondent was injured?

The evidence that it was not burning, at the most, was of a negative character. Only one of the witnesses noticed the car at a point closer to the crosswalk than fifteen feet, and that witness, Ada Gilbertson, had but a fleeting glance at it, and said: "I just saw it out of the corner of my eyes in that quick glance."

The failure to notice the street car and to ascertain whether its lights were burning was natural, because the witnesses either lived in the vicinity and did not take particular notice of passing cars, or were friends

of respondent and were interested only in watching him cross the track to the waiting automobile.

"Where the attention of those testifying to a negative was not attracted to the occurrence which they say they did not see or hear, and where their situation was not such that they probably would have observed it, their testimony is not inconsistent with that of credible witnesses who were in a situation favorable for observation, and who testify affirmatively and positively to the occurrence. There is then no conflict." *Chicago & N. W. R. Co. v. Andrews,* 130 Fed. 65.

Cases of like import are: *Anspach v. Philadelphia & R. R. Co.,* 225 Pa. 528, 74 Atl. 373, 28 L. R. A. (N. S.) 382; *Zotter v. Lehigh Valley Co.,* 280 Pa. 14, 124 Atl. 284; *Crystal v. Baltimore & B. A. Electric R. Co.,* 150 Md. 256, 132 Atl. 629; *Twining v. Lehigh & N. E. R. Co.,* 310 Pa. 429, 165 Atl. 489; *Cooper v. Southern R. Co.,* 153 Va. 93, 149 S. E. 444; *Pere Marquette R. Co. v. Anderson,* 29 F. (2d) 479; *Globe Indemnity Co. v. Stenger,* 82 Colo. 47, 256 Pac. 658; *Handy v. New Orleans Public Service,* 10 La. App. 72, 120 So. 271.

In *Crystal v. Baltimore & B. A. Electric R. Co., supra,* the court had before it a case where there was evidence that the automobile driver looked but did not see the approaching headlights of the street car. In that case, the driver of the automobile testified that he heard no bell or other signal given of the approach of the street car, and that neither the driver nor his helper saw the car or any light before the accident, but that the light was out after the accident.

In that case, the court said:

"Testimony must have more than a speculative value before it can be regarded as of testimonial sufficiency to establish a material fact. And this principle is particularly applicable in the present connection because, in the driver's signed statement, he said, consistently with all the other testimony on the record, that, while lying on the ground after the collision, he noticed that

all the car lights were out, but that he did 'not know if they were out at time of collision, or if collision caused trolley to fly off.' The evidence of negligence must be affirmative and there can be no presumption that the lights were not burning on the electric car."

The fleeting view of the car as it approached respondent brings this case within the rule announced in *Dunsmoor v. North Coast Transp. Co.*, 154 Wash. 229, 281 Pac. 995, in which this court stated:

"The trial court sustained the motion for a nonsuit on the ground that there was no evidence of negligence on the part of the driver of the stage. With this conclusion we are constrained to agree. The only evidence that pointed to negligence on the part of the driver were estimates made by the appellant's witnesses as to the speed of the stage. But these were made under conditions that leave them of no probative value. Davis, who was in the better position to judge of the speed of the stage, says that he did not see the stage until after it passed him, just immediately prior to the collision. His view of it, at best, could have been nothing more than a fleeting glance. The driver of the car, with which the stage collided was somewhat more emphatic. She says the stage was traveling at a speed of fifty miles per hour. But, as she further testifies that she did not see the stage until after she turned her car into its path, when it was no more than a hundred feet away, coming head-on towards her, it is plain that she could make no very accurate estimate of its rate of speed. She was herself traveling towards the stage at approximately thirty miles per hour, and, estimating the speed of the stage at the legal limit, the vehicles would come together in less than a second from the time she first saw the stage. Aside from the fact that she was observing the stage from a position in which it was the most difficult to judge accurately of its speed, she must have been alarmed at the situation in which she had placed herself, and must have been giving some attention to the management of her own car. These conditions would put further difficulties in the way of an accurate judgment. Like the trial court, we cannot

think her estimate has any better foundation than a mere guess.

"It was incumbent upon the appellant, in order to recover against the respondent, to show that its driver was guilty of negligence. This she must show by substantial evidence—a scintilla of evidence will not do—and, in our opinion, the evidence here is not of that substantial character on which a jury is permitted to found a verdict."

The case just cited has been followed in *Hansen v. Continental Casualty Co.*, 156 Wash. 691, 287 Pac. 894; *Cartwright v. Boyce*, 167 Wash. 175, 8 P. (2d) 968; *Haydon v. Bay City Fuel Co.*, 167 Wash. 212, 9 P. (2d) 98; *Femling v. Star Pub. Co.*, 195 Wash. 395, 81 P. (2d) 293.

In *Hansen v. Continental Casualty Co., supra,* it was said:

"We have adopted the fair and reasonable rule of requiring substantial evidence, not merely a scintilla of evidence, to satisfy the requirement of a preponderance of the evidence. And while, under a motion for judgment notwithstanding the verdict, all evidence and fair inferences from the evidence must be considered in the light most favorable to the party against whom the motion is directed, we are nevertheless satisfied that there is no substantial evidence in this case to show that any authorized agent of the appellant had any notice of the accident in question until after the policy had been issued."

In considering the evidence in the instant case, we must find that there was no substantial evidence upon which the jury could have found that the street car had lights which were not burning. There is no presumption that the lights were not burning. *Crystal v. Baltimore & B. A. Electric R. Co., supra.*

In view of the definite testimony that the headlight was burning, the evidence relative to its burning some time before the accident, together with the admitted

fact that it was out immediately after the car struck respondent and the outer glass was broken, we conclude that the headlight must have been burning before the impact as the street car approached the crosswalk upon which respondent was walking.

We come now to the problem of whether respondent was guilty of contributory negligence in crossing the car tracks as he did. He testified that, when he reached the guard rail near the track, he looked right and then left before starting to walk across the tracks and, as stated hereinbefore, he testified that he did not see an approaching street car.

The tracks, streets, and the other physical conditions surrounding the place where the accident occurred in this case and the actions of respondent are almost identical with those reported in *Simmons v. Seattle*, 154 Wash. 66, 280 Pac. 931. In that case, as in this, the injured person testified that she looked for an approaching car, but did not see it, and, further, that she heard no warning signal of its approach and that the car was traveling at an excessive rate of speed. The court stated:

"But this was not sufficient to excuse her. The situation is not materially different from the situation presented in the case of *McClelland v. Pacific Northwest Traction Co.*, 138 Wash. 527, 244 Pac. 710, where we held that the facts did not justify a recovery on the part of the injured plantiff. In that case, we said:

" 'The claim of error is that the court erroneously took the case from the jury. It seems to us that appellant's own testimony conclusively shows that she was attempting to walk across the tracks in front of the oncoming interurban car of respondent while fully conscious of, and for the most part actually continually seeing, the approach of the car, during the entire time of its approach over a distance of at least 250 feet. Her view, manifestly, was unobstructed. Her approach from the curb to the track was not in the slightest de-

gree interfered with by any passing vehicles or other traffic of any kind. Conceding, for present purposes, that respondent's motorman was negligent in the operation of the car, in so far as its speed is concerned, though we regard that as very doubtful, we are nevertheless of the opinion that her own testimony conclusively shows that she was herself negligent in such degree that her negligence became the predominating proximate cause of her being injured. She was a pedestrian there, not the driver of a vehicle, and hence, at least in some considerable measure, had larger opportunity for protecting herself than the driver of a vehicle would have, in that she would have more thorough control over her own movements. The following of our decisions touching the question of contributory negligence of pedestrians in somewhat similar situations, we think, strongly support our conclusions here reached: [Citing cases].' "

The excessive speed of an oncoming car does not relieve one who is crossing the track from the duty of exercising ordinary care for his own safety and to ascertain whether or not a car is approaching before attempting to cross. *Fluhart v. Seattle Electric Co.,* 65 Wash. 291, 118 Pac. 51; *Beach v. Pacific Northwest Traction Co.,* 135 Wash. 290, 237 Pac. 737.

In *Fluhart v. Seattle Electric Co., supra,* the injured person testified that he looked both ways before starting to cross a street railway track, but could not see the approaching car. In passing upon the question of his contributory negligence, this court stated:

"There was neither necessity nor excuse for stepping in front of the car even though it was approaching at an unlawful speed. Negligence on the part of appellant did not relieve respondent from the duty of exercising care and avoiding contributory negligence on his part. . . .

". . . Evidence of physical facts making it certain a pedestrian must have seen, or could have seen an approaching car had he looked, renders unavailing his unsupported statement that he did look but could

not see. Oral statements, although undisputed, must yield to undisputed physical facts and conditions with which they are irreconcilable. From the physical facts and respondent's evidence it is apparent he recklessly, carelessly, and negligently walked too near the approaching car, and that in so doing he was guilty of contributory negligence."

The following statement of Judge Chadwick in referring to a plaintiff injured while crossing in front of a street car in *Slipper v. Seattle Electric Co.*, 71 Wash. 279, 128 Pac. 233, is especially pertinent to the facts testified to and the physical situation present in the case at bar:

"He should have been to some extent at least, mindful of his own safety. The cable makes quite a noise and the car makes an even greater noise. The track itself was a sign and warning of danger; it was under his eye and must have been seen if he was looking in the direction in which he was going . . .

". . . He might continue in motion; he might close his eyes; but his ears were open and, though slightly deaf, there is no evidence tending to show that he could not hear ordinary sounds and conversation."

In the following cases, this court has held that a person walking in front of a street car or automobile is guilty of contributory negligence even though he testifies that he looked and did not see an object which plainly could have been seen. Even if he did not see the object, he is held to that same degree of care if it is shown that the object was present and could have been seen by looking. *Helliesen v. Seattle Electric Co.*, 56 Wash. 278, 105 Pac. 458; *Herrett v. Puget Sound T., L. & P. Co.*, 103 Wash. 101, 173 Pac. 1024; *Silverstein v. Adams*, 134 Wash. 430, 235 Pac. 784; *Campbell v. Spokane United Railways Co.*, 174 Wash. 347, 24 P. (2d) 1068.

It is clearly apparent in this case that, when respondent started across the street car tracks, the street

car was some distance to his left, in plain sight and lighted on the inside, its headlight was burning, it was making considerable noise as it approached the crosswalk, and that respondent was guilty of contributory negligence, as a matter of law, when he attempted to cross in front of the moving car.

The judgment is reversed, with instruction to dismiss the action.

BEALS, GERAGHTY, and ROBINSON, JJ., concur.

BLAKE, C. J. (dissenting)—Upon the facts disclosed by the record, I think the question of contributory negligence was for the jury. I therefore dissent.