[No. 34216-2-II.   Division Two.   October 3, 2006.]

BENITA K. JOHNSON, *Individually and as Personal Representative*, ET AL., *Appellants*, v. ALUMINUM PRECISION PRODUCTS, INC., ET AL., *Respondents*.

*Margaret C. Holm*; and *John Budlong* and *Faye J. Wong* (of *Law Offices of John Budlong*), for appellants.

*Francis S. Floyd, A. Troy Hunter*, and *Amber L. Pearce* (of *Floyd & Pflueger, P.S.*), for respondents.

¶1 ARMSTRONG, J. — Benita and Stanley Johnson appeal a summary judgment dismissing their claim for the wrongful death of their son, Brandon, against The Paintball Store, U.S. (Store). The claim arose when a $CO_2$ (carbon dioxide) canister, which the Store had filled, exploded from Brandon's paintball gun, killing him. The Johnsons argue, in part, that they presented evidence sufficient to create an issue of material fact as to whether the Store negligently filled a defective canister. We agree and, therefore, reverse and remand.

## FACTS

¶2 Brandon Johnson died of massive head trauma caused when a $CO_2$ canister unexpectedly shot up from his paintball marker[1] and struck his forehead. Brandon purchased the marker and canister on-line from Rick's Superstores and received them in the mail a few days before the accident. Both were apparently new. Brandon's

---

[1] Throughout the record, we use the terms "marker" and "paintball gun" interchangeably.

mother, Benita Johnson, told him not to mess with the various accessories until an adult could help him assemble them.

¶3 Brandon kept the items in his room for a few days and then put them in his mother's car. Benita drove him to his baseball game. After the game, Brandon retrieved the canister and gave it to Christine Ventura. Christine took Brandon's canister, along with a few other friends' canisters, to the Store to have them filled with $CO_2$. Christine watched as a store clerk filled the canisters. She described the process:

> He had me put the tanks down on the counter and then he, you know, took them. And they have the tank in the back that they fill it with. And they just put the tank on and they make that "psst"—that sound to let some stuff out, and they fill it up. And then they do that sound again to let some over [sic] stuff out and bring it back over to you. And so that's pretty much how was [sic] it was done.

Clerk's Papers (CP) at 87. Christine did not watch the entire process with each canister because of distractions. For example, a few of Brandon's friends had accompanied her to purchase paintballs, and she realized she had forgotten her purse and had to call another mother to come to the store and pay. Christine then took the tanks to the Kessel residence where Brandon and his friends were planning to play paintball.

¶4 No one saw Brandon use tools of any kind when attaching the canister to his marker. The boys played paintball under the supervision of two adults, including Greg Kessel. They played in the woods and in the Kessels' backyard for up to an hour.

¶5 When they stopped playing, Brandon attempted to remove his canister from his marker. He was bent over, holding the marker between his legs, the muzzle pointed toward the ground, using both hands to unscrew the canister. Greg could see that he was physically straining. He started to turn away when he saw a grayish-white gas out

of the corner of his eye and heard a sound like the "swoosh" of a bottle rocket or a firework taking off. CP at 50. Then Brandon brushed up against him and fell to the ground. He died five days later.

¶6 The canister consisted of two pieces: an aluminum cylinder and a pneumatic valve. After the accident, it was apparent that, rather than unscrewing the valve from the marker, Brandon had unscrewed the cylinder from the valve. The sudden release of $CO_2$ had propelled the cylinder upward into Brandon's forehead with such force that it ricocheted into the neighboring woods. The cylinder was never recovered.

¶7 The valve remained in Brandon's marker. When Greg inspected it after the accident, he noticed no marks or anything that would lead him to believe that it was other than new. But later investigation revealed the presence of tool marks, apparently made by a wrench or pliers, on the valve.

¶8 Brandon's parents sued the manufacturers of the marker and canister, the Internet vendor, and the Store. The Johnsons settled with the manufacturers. The Store moved for summary judgment on the ground that the Johnsons could provide no evidence of negligence by the Store.

¶9 In opposition, the Johnsons offered statements by their expert metallurgist and by the Store's owner. The metallurgist, Dr. George Tardiff, stated that the tool marks on the valve demonstrated that someone had loosened the seal that held the valve to the cylinder, thereby compromising the seal's integrity and making the canister very dangerous. John Heater, the Store's owner, stated that the Store's employees briefly inspected each canister before filling it but that tool marks on canisters were not unusual and did not indicate a weakened structural integrity. Heater also stated that the Store's procedures are standard in the paintball industry. Heater also testified that the Store acquires reconditioned, used canisters for resale. Canisters that look used are sold for a reduced rate, but

perfect-looking, reconditioned canisters are priced as new. The Johnsons argued that this evidence was sufficient to prove either that the Store had switched Brandon's new canister for a defective, used one or that the Store had negligently filled a visibly defective canister.

## ANALYSIS

■ ■ ¶10 We review a summary judgment de novo. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004) (citing *Kruse v. Hemp*, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993)). Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). We consider all facts in the light most favorable to the nonmoving party. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005) (citing *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990)); *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

¶11 The Johnsons offered two theories as to the Store's liability: (1) the Store switched Brandon's new canister for a defective canister or (2) the Store negligently filled a canister that was visibly defective.

### 1. The Switched Canister Theory

¶12 The Johnsons claim that the Store, instead of filling Brandon's new $CO_2$ canister and returning it to Christine, kept Brandon's canister and gave Christine a used, defective one. If so, a jury could find the Store liable.

■ ¶13 We never presume negligence; a party alleging negligence bears the burden of proving it by substantial evidence. *Wilson v. Stone*, 71 Wn.2d 799, 802, 431 P.2d 209 (1967) (citing *Charlton v. Baker*, 61 Wn.2d 369, 372, 378 P.2d 432 (1963)). A scintilla of evidence is insufficient to

carry this burden. *Wilson*, 71 Wn.2d at 802 (citing *Poland v. City of Seattle*, 200 Wash. 208, 216, 93 P.2d 379 (1939)). Substantial evidence is " 'of a character which would convince an unprejudiced, thinking mind of the truth of the fact to which the evidence is directed. A verdict cannot be founded on mere theory or speculation.' " *Campbell v. ITE Imperial Corp.*, 107 Wn.2d 807, 818, 733 P.2d 969 (1987) (internal quotation marks omitted) (quoting *Hojem v. Kelly*, 93 Wn.2d 143, 145, 606 P.2d 275 (1980)).

¶14 The Johnsons offer two pieces of evidence that the Store switched the canisters: (1) the tool marks on the valve after the accident suggest that the canister that exploded was not the new canister Brandon had received in the mail a few days before and (2) the Store had an "economic motive" for switching canisters. Br. of Appellant at 22. The tool marks support an inference that somebody switched canisters or tampered with the canister, but the marks do not show when this occurred or who did it. Christine saw nothing at the Store to support the switched-canister theory. And although no witness noticed the marks on the valve before the Store filled the canister, Greg also did not notice the marks when he inspected the valve after the accident, suggesting that, at least to the untrained eye, the marks did not stand out.

¶15 But the Johnsons also argue that the Store had an economic motive to switch the canisters. They point to evidence that the Store routinely sold used canisters as new to increase profits. Thus, they contend, a jury could have inferred that the Store decided to give Christine a used canister and keep Brandon's new canister.

¶16 We are not persuaded. Although the Store may have sold used canisters as new in the past, the Johnsons offered no evidence that the Store routinely switched customers' new canisters for old ones. Without evidence that the Store did so, the Johnsons' switched-canister theory is no more than speculation. *See* ER 406.

¶17 We conclude that the trial court did not err in rejecting the Johnsons' switched-canister theory. The John-

sons failed to present substantial evidence in support of the theory.

## 2. The Negligent Filling Theory

¶18 The Johnsons also argue that the Store had a duty to inspect the canister before filling it, that such an inspection would have revealed the tool marks on the valve, that these marks were evidence of tampering, and that the Store should not have filled a canister with a tampered valve.

¶19 The elements of a negligence claim are duty, breach, proximate cause, and damage. *Mathis v. Ammons*, 84 Wn. App. 411, 415-16, 928 P.2d 431 (1996) (citing *Hansen v. Friend*, 118 Wn.2d 476, 479, 824 P.2d 483 (1992); *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 220, 802 P.2d 1360 (1991); *Pedroza v. Bryant*, 101 Wn.2d 226, 228, 677 P.2d 166 (1984)). The Store does not dispute that it had a duty to conduct a safety inspection before filling the canister. Heater stated that all store employees "are trained to do a basic safety inspection of each canister prior to filling." CP at 116. The inspection procedures "are accepted standards in the paintball industry." CP at 116. And the inspection included "checking the canister for any gouges or dents, heat damage or damage to the threads of the valve." CP at 116.

¶20 The trial judge too did not question that the Store had a duty to inspect the canister before filling it. Rather, the trial court ruled that there was no evidence the Store breached its duty because there was no evidence the tool marks were on the valve when the Store filled it.

¶21 But the evidence showed that after the Store filled the canister, Christine drove the filled canisters to the Kessels' house. There is no evidence that anyone handled the canister during the trip to the Kessels'. There, the boys retrieved it and the other canisters and prepared for their game. Brandon's friends testified that nobody used tools to attach the canisters to the markers. And Greg testified that he saw Brandon working with his hands to get the canister off the marker after the boys finished the game. Viewed in

the light most favorable to the Johnsons, this evidence is sufficient to allow a jury to find that the marks were on the valve when the Store filled the canister. Thus, the trial court erred in granting summary judgment for the Store on this theory.

¶22 Finally, the Johnsons presented evidence that the Store was negligent. Although Heater declared that tools are commonly used on canister valves to remove the canister from the gun and that the tool marks here "would not typically raise any concerns for a paintball store employee with respect to the canister's integrity," the Johnsons' metallurgist contradicted this. CP at 117. Tardiff stated that the presence of tool marks on the wrenching section of the valve and the head of the burst disk fitting should have alerted the filler that the canister valve had been tampered with. The most intense marks are easily seen with the unaided eye and are in locations consistent with loosening the valve from its canister. These marks should have been a warning to the filler that the seal between the canister and its valve might have been broken and that the filled canister could pose a danger to its user.

¶23 Thus, the Johnsons have presented sufficient evidence to create an issue of material fact as to whether the marks were the kind that would alert a store employee to the danger of filling the canister.

¶24 We conclude that the trial court erred in dismissing on summary judgment the Johnsons' claim that the Store was negligent in filling an obviously defective canister.

¶25 Reversed and remanded.

QUINN-BRINTNALL and PENOYAR, JJ., concur.

Review denied at 161 Wn.2d 1005 (2007).